IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

---------------------------------------------------------x
In re                                          :          Chapter 11
                                               :
       CHS FL, LLC, *et al.*,                  :          Case No. 26-bk-01087
                                               :
                              Debtor.          :          Jointly Administered
                                               :
---------------------------------------------------------x

**CITY OF PHILADELPHIA'S MOTION TO COMPEL DEBTORS TO REJECT
EXECUTORY CONTRACT PURSUANT TO SECTION 365(d)(2)**

**[EMERGENCY HEARING REQUESTED][1]**

AND NOW, comes the City of Philadelphia, (the "City"), a creditor in the above-captioned case, by and through its Counsel, Pamela Elchert Thurmond, Senior Attorney, pursuant to 11 U.S.C. § 365, Fed. R. Bankr. P. 9014 and Local Rule 9013-1 to compel the Debtors to reject the provider agreement between the City and CHS TX, Inc. (Provider Agreement")[2] to provide prison physical and behavioral healthcare services at Philadelphia's correctional facilities on a mutually agreed upon date, which is no later than 6/1/26.

The City seeks to reject the Provider Agreement because the Debtors' inability to pay staff wages has dramatically and substantially affected the staffing at Philadelphia Department of Prisons (PDP)'s facilities.  Most significantly on Sunday evening (5/17) every RN and LPN called out for an overnight shift at the City's largest facility, which required both the City and the Debtors to engage administrative staff to cover medical triage. Moreover, since at least May 12, 2026, the

---

[1] The City would request, if possible, the hearing be held telephonically or by use a video conferencing service (like Zoom) or counsel be granted permission to appear remotely due to her distance from the courthouse.

[2] The City's provider agreement was originally entered into with Corizon Health, Inc. on January 1, 2022.  The City's 2022 contract was ultimately allocated to CHS TX, Inc. as part of the divisional merger of Corizon Health, Inc. See Exhibit A (original contract and last addendum attached).  Full contract is available upon request.

Debtors' phone service in Philadelphia has been discontinued, which upon information and belief, is due to a lack of payment.  Prior to the bankruptcy filing, the Provider Agreement was already scheduled to end on June 31, 2026, and the City has contracted with a new service provider to begin on July 1, 2026.

The City avers the following in support thereof:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The City consents to entry of a final judgment by the Court in connection with the instant Motion.

**FACTUAL STATEMENT**

2.      On January 1, 2022, the City entered into the Provider Agreement with Corizon Health, Inc. to provide prison physical and behavioral health care services at the PDP facilities. The contract went through nine amendments and was last amended on January 1, 2026, and is set to expire on its own terms on June 30, 2026.

3.      The Debtors provide prison health care services at PDP's Curran-Fromhold Correctional Facility, the Detention Center, the Philadelphia Industrial Correctional Center, and the Riverside Correctional Facility as well as two off-site facilities.

4.      The City relies upon the Debtors to provide physical and behavioral health care to incarcerated folks including primary care, dentistry, psychiatry, dialysis, ob/gyn, wound care, physical therapy, labs and x-ray.  In 2025, the Debtors' staff  of nurses, physicians and other critical health professionals conducted tens of thousands of intake appointments and laboratory tests and over a hundred thousand prescription visits.

5.      The Debtors also contracted with pharmacies to provide critical medications for patients at PDP facilities.  Debtor's First Day Declaration [D.I. 25 at ¶ 9].

6.      The Debtor's failure to pay staff wages has dramatically affected the staffing at PDP's facilities including having every RN and LPN call out for an overnight shift on Sunday evening (5/17) at PPD's largest facility, which required the Debtors and the City to engage administrative staff to cover medical triage.

7.      Moreover, since at least May 12, 2026, the Debtors' phone service in Philadelphia has been discontinued, which upon information and belief, is due to a lack of payment.

8.      Commencing on July 1, 2026, the City will have a new service provider providing services at PDP's facilities and that service provider is ready and willing to start providing services early.

9.      On May 8, 2026 & May 13, 2026, the Debtors filed for Chapter 11 bankruptcy cases with this Court.

10.     The Debtors have been operating their business and managing their affairs as debtors and debtors-in-possession pursuant to the Bankruptcy Code §§ 1107 and 1108.

11.     The basis for the relief requested herein is Bankruptcy Code §§ 362(d), Fed. Bankr. P. 9014 and Local Rule 9013-1.

12.     To date, the Debtors have not moved the Court to assume or reject the Provider Agreement.

13.     Pursuant to Section 362 of the Bankruptcy Code, the City is stayed from taking any action to terminate the Provider Agreement with the Debtors.  Unless the Debtors take affirmative action to assume or reject the Contract, the Movant will suffer irreparable damage from critically

low staffing and the real possibility of loss of staff and institutional knowledge.  The City fulfills its legal requirements to provide physical and behavioral health services for chronic and emergent health issues for the City's incarcerated population by contracting with service providers.   If the City is unable to fulfill its legal obligations, it will likely be exposed to increased litigation.

**LEGAL ARGUMENT**

14.     The City's Provider Agreement with the Debtors is executory as material performance remains on both sides.  See e.g., In re Gencor Industries, Inc., 298 B.R. 902, 908 (Bk. M.D. Fla. 2003)(finding executory contracts is one which performance remains on both sides).

15.     Section 365(d)(2) of the Bankruptcy Code provides that a debtor may assume or reject executory contracts before confirmation of the plan.

16.     Section 365(d)(2) also provides that the Court may, on the request of a nondebtor party to such contract, shorten the time within which the Debtors must decide to assume or reject the contract or lease.

17.     The breathing room afforded by Section 365(d)(2) is not limitless as "[t]he determination of what constitutes a reasonable time to assume, or reject is within the bankruptcy court's discretion based on the particular facts of each case."  In re Adelphia Communications Corp., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

18.     In determining what a reasonable time is for a debtor to decide whether to assume or reject a contract, courts must balance the following factors:

> a.   "the nature of the interests at stake;"
> b.   "the balance of the harm to the litigant;"
> c.   "the good to be achieved;"
> d.   "the safeguards afforded to the litigants;"
> e.   "whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;"
> f.   "the debtor's failure or ability to satisfy post-petition obligations;"

g. "the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;"
h. "the importance of the contract to the debtor's business and reorganization;"
i. "whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;"
j. "whether there is a need for judicial determination as to whether an executory contract exists;"
k. "whether exclusivity has been terminated;" and
l. "above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors."

In re Adelphia Communications Corp., 291 B.R. at 293.

19.     Furthermore, pursuant to section 105(d)(2) of the Bankruptcy Code, courts have authority to enter an order compelling debtors to assume or reject executory contracts by a date certain. 11 U.S.C. § 105(d)(2)(A)(courts have authority to issue various kinds of orders, including an order that ("sets the date by which the trustee must assume or reject an executory contract or unexpired lease.").

20.     This is the twelfth day in bankruptcy for most Debtors. The Debtors filed their Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition (A) Wages, Salaries and other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and other Benefits Programs and (II) Granting Related Relief [D.I. 10] as part of their First Day presentation.  However, the Debtors did not press the Wages Motion on May 11th, and the Court continued the hearing until 6/3/2026. [D.I. 59].[3]

21.      Thus, the Debtors have not figured out how they are going accomplish the critical function of paying their employees for their pre-petition wages.  Employees are unpaid for wages that should have been paid on May 8 and May 15, 2026.

---

[3] The City had heard that the Debtors would be requesting an expedited hearing for 5/19/26, but as of the submission of this brief, that has not happened.

22.     The Debtors' employees going without wages have led to critically low staffing levels at PDP facilities, which are unsustainable and may impact patient care quality.

23.     Moreover, the longer the employees go unpaid, the greater the risk that the employees will seek other employment depriving the PDP facilities of substantial institutional knowledge.

24.  In addition, the Provider Agreement is of minimal value to the Debtors due to its limited remaining duration.  It is highly unlikely the Debtors will be able to assume and assign the Provider Agreement to a new service provider with only five full weeks remaining.

25.     In sum, the Court must make an equitable determination based on the balance of harm and considering the circumstances of the parties to the Provider Agreement. The totality of the circumstances and the interest of justice in this case weigh in favor of compelling the Debtors to reject the Provider Agreement due to substantial prejudice to the City from critical staffing issues and the Provider Agreement is of minimal value to the Debtors due to its limited remaining duration.

26.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, for the foregoing reasons, Movant respectfully requests that the Court enter an order, substantially in the form attached hereto, compelling Debtors to reject the Contract under 365(d)(2) of the Bankruptcy Code by a mutually agreed upon date that is no later than June 1, 2026.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: May 19, 2026        By:    */s/ Pamela Elchert Thurmond*
PAMELA ELCHERT THURMOND
Senior Attorney
PA Attorney I.D. 202054
Appearing as a Governmental Attorney
Attorney for the City of Philadelphia
City of Philadelphia Law Department
Municipal Services Building
1401 JFK Boulevard, 5th Floor
Philadelphia, PA  19102-1595
215-686-0508 (phone)
Email: Pamela.Thurmond@phila.gov

7