UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

---------------------------------------------------------X

In re:                                                                          Chapter 11 Cases

CHS FL, LLC, *et al.,*[1]                                              Case No.  2:26-bk-01087-FMR

                                     Debtors.                          Jointly Administered

---------------------------------------------------------X

### STIPULATION AND ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION

### RECITALS

**WHEREAS**, on May 8, 2026 and May 13, 2026 (the "Petition Date"), the above-captioned debtors, YesCare Corp. and CHS Tx Inc. and related affiliates (collectively, the "Debtors") filed respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Chapter 11 Cases"), 11 U.S.C.§ 101 et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"); and

**WHEREAS**, the Debtors have continued in possession and management of their businesses as health service providers to inmate populations as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108; and

**WHEREAS**, prior to the Petition Date, one or more of the Debtors became indebted to M2 LoanCo LLC (the "Lender") under that certain Amended and Restated Credit Agreement (as amended and/or modified from time to time), and certain of the Debtors owe Lender approximately

---

[1] The address of the Lead Debtor is 3347 Tamiami Trail E., Naples, FL 34112. The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

1

$16,000,000 of principal plus accrued interest and fees (the "Senior Secured Loans and Claims"); and

WHEREAS, the Senior Secured Loans and Claims are administered by Cortland Capital Market Services LLC as collateral agent, which perfected the liens and security interests of the Lender covering certain of the Debtors' operating assets, including accounts receivable and the proceeds thereof, plus other cash and cash equivalents (hereinafter, the "Cash Collateral") as defined by Bankruptcy Code section 363; and

WHEREAS, the Debtors admit, stipulate and acknowledge that the Lender holds a valid and duly perfected senior-secured first priority lien and security interest on substantially all of the Debtors' operating assets (the "Collateral"), including the Cash Collateral to secure the Senior Secured Loans and Claims; and

WHEREAS, the Debtors require access and use of the Cash Collateral to operate their businesses and, particularly, to pay employees and provide health care services; and

WHEREAS, prior to the Petition Date, the Debtors receivables were paid to an affiliated entity, TN Correct Health Services, LLC ("TN Services"), which paid bills of the Debtors and funded payroll through CHS Employee Group LLC, subject to the Lender's liens; and

WHEREAS, the Lender hereby consents to the Debtors' use of Cash Collateral through June 30, 2026 in accordance with the terms of this Stipulation and the attached Budget, with such consent not to be deemed or construed as a waiver of any rights, claims, arguments, or other entitlement to relief requested or asserted by the Lender in any other motion or proceeding, each and all of which is specifically reserved; and

2

111197165.4

**WHEREAS,** pursuant to Bankruptcy Code section 363(c)(2), the Debtors acknowledge the accounts receivable and the proceeds thereof constitute Cash Collateral and the Debtors may not use the Cash Collateral without the Lender's consent or further order of the Court; and

**WHEREAS,** the Debtors and the Lender hereby stipulate and agree to provide for the use of the Cash Collateral and to provide the Lender with adequate protection therefor as defined in Bankruptcy Code sections 361 and 363(a) upon and subject to the terms and conditions as stated below; and

**WHEREAS,** this Stipulation and Order has been negotiated in good faith and is fair and reasonable under the circumstances.

NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED BY THE UNDERSIGNED PARTIES, AND SO-ORDERED BY THE COURT, that:

1.      Incorporation of Recitals. The Recitals set forth above are incorporated herein by reference and shall be deemed to be true and correct as such statements apply to each or all the parties, as applicable. Each of the parties to this Stipulation represents that it has the right and authority to execute this Stipulation and act in accordance with its terms.

2.      Use of Cash Collateral. The Debtors are authorized, pursuant to Bankruptcy Code section 363(c)(2)(B), to use Cash Collateral on an interim basis on the terms hereof in accordance with the Budget (as defined below), with the collections to continue by TN Services for deposit into the Debtors' DIP accounts based upon regular sweeps.

3.      Findings Regarding Use of Cash Collateral.

a.      Good cause has been shown for the entry of this Stipulation and Order to maintain the Debtors' business and allow the Debtors the opportunity to consider their restructuring options.

111197165.4

b.       The Debtors have an immediate need to use Cash Collateral and has requested that the Lender permit the use of Cash Collateral to operate their businesses in accordance with the budget attached hereto as Exhibit A (the "Budget"). The Budget may not be amended by the Debtors without the written prior consent of the Lender.

c.       The Lender is willing to permit the Debtors to use Cash Collateral only upon the terms and conditions contained in this Stipulation and Order and in accordance with the Budget.

d.       It is in the best interest of the Debtors' estates that, in exchange for providing adequate protection to the Lender, the Debtors be allowed to utilize Cash Collateral under the terms and conditions set forth herein and in accordance with the Budget.

e.       The use of the Cash Collateral has been the subject of negotiations conducted in good faith and at arm's length by the parties and their counsel.

4.       Adequate Protection.  The Debtors acknowledge and the Court hereby finds that the Debtors' use of Cash Collateral may potentially result in diminution in value of the Collateral ("Collateral Diminution") and, as a result, the Lender is entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), to adequate protection of its interest in the Collateral in an amount equal to the aggregate diminution in value of the Lender's interest in the Collateral, if any, including, without limitation, any such diminution caused by or resulting from any losses from the Debtors' operations and the imposition of the automatic stay pursuant to Bankruptcy Code section 362.

a.       As adequate protection, the Lender is hereby granted the following postpetition liens and claims:

(i)       Continuing Liens. The Lender is hereby granted a valid and perfected first priority replacement liens and security interest in and a lien upon (collectively, the

4

111197165.4

*"Replacement Liens"*), effective as of the Petition Date, to the same extent, validity and priority that existed on the Petition Date, on all post-petition accounts receivable and other assets of the Debtors' estates, together with all proceeds and profits thereof.  The Replacement Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or in any cases under Chapter 7 of the Bankruptcy Code.

(ii)    Section 507(b) Claim. The Lender is also entitled to a super-priority claim as provided in Bankruptcy Code section 507(b) equal to the amount of Collateral Diminution since the Petition Date (the "AP Superpriority Claim") and shall have priority in right of payment over any and all other obligations now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), and 726, and shall at all times be senior to the rights of the Debtors, any trustee or any creditor, whether arising in the Debtors' Chapter 11 Cases or in any superseding Chapter 7 cases or proceeding under the Bankruptcy Code, subject and subordinate only to the Carve-Out, as defined below.

(iii)   Adequate Protection Payments.  Commencing on June 1, 2026, and continuing on the 20th day of each month thereafter, the Debtors shall pay to the Lender all excess cash flow from amounts generated from operation of the Debtors' businesses during

111197165.4

the previous month, with excess cash flow defined as collected gross receivables less allowed budgeted expenses (hereinafter, "Adequate Protection Payments").

5.      Carve-Out.    Notwithstanding anything to the contrary herein, the Debtors' obligations to the Lender, and the Replacement Liens and super priority claims granted herein shall be subject in all respects and subordinate to the Carve-Out.

a.      "Carve Out" shall mean only (i) earned, but unpaid professional fees for retained professionals of the Debtors' bankruptcy estates as provided in the Budget; (ii) the fees required to be paid to the U.S. Trustee under section 1930(a) of title 28 of the United States Code; and (iii) all reasonable fees and expenses up to $25,000 incurred by a Chapter 7 trustee under Section 726(b) of the Bankruptcy Code.

6.      The security interests and liens herein granted, including the Replacement Liens (i) are and shall be in addition to, and not in substitution of, all security interests, liens, encumbrances, and rights of set-off existing in favor of the Lender on the Petition Date, or other rights of the Lender currently existing or hereinafter arising and (ii) shall secure, in whole or in part, the payment of the secured indebtedness owed to the Lender. This Stipulation shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect with applicable non-bankruptcy law the Replacement Liens or to entitle the Lender to the priorities granted herein. Notwithstanding the foregoing, the Lender is authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices of lien, and other similar documents to perfect in accordance with

6

applicable non-bankruptcy law or to otherwise evidence the applicable Replacement Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date. However, no such filing or recordation shall be necessary or required in order to create or perfect the Replacement Liens.

7.     The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without application to or further order of this Court, to permit the Debtors (a) to grant the Replacement Liens and AP Superpriority Claim, (b) to perform such acts as the Lender may request to assure the perfection and priority of the Replacement Liens, and (c) to pay the Lender adequate protection payments in accordance with the terms of this Order.

8.     The Debtors' obligations and acknowledgements in connection with the use of Cash Collateral are as follows:

a.     The Debtors can only use Cash Collateral to pay for the agreed monthly operating expenses as set forth in the Budget. Ordinary expenses shall be defined as those items set forth in the Budget and shall be in amounts which do not exceed the amount specified therein for each category of expenses, subject to a monthly variance of five (5%) percent per line item and ten (10%) of the total monthly budget (the "Allowed Variances"). The Debtors shall obtain Lender's written permission (which may be via email) before making or incurring any obligation or making or incurring any expenditures of Cash Collateral in excess of the Allowed Variances.

b.     The Debtors shall promptly, in cooperation with the Lender but at the sole expense of the Debtors as set forth in the Budget, open and establish Debtor-in-Possession bank accounts (the "DIP Accounts") with all funds in the DIP Accounts to remain subject to the Lender's lien and security interest hereunder.

111197165.4

c.      The Debtors shall report the collection and expenditures of the Cash Collateral as part of the Debtors' monthly operating reports ("MORs"), which the Debtors shall file with the Court in accordance with the guidelines of the United States Trustees on timely basis.

9.      Disposition of Collateral. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Lender's Collateral outside of the ordinary course of business without the prior written consent of the Lender.

10.     Prohibition on Granting of Additional Liens and Interests. No liens, claims, interests, or priority status having a lien or administrative priority superior to or *pari passu* with that of the Replacement Liens or the AP Superpriority Claim granted by this Order shall be granted without the prior written consent of the Lender.

11.     No Surcharge.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time by the debtors-in-possession or other creditors shall be charged against Lender or its Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Lender. This waiver of a surcharge under 11 U.S.C. §506 (c) does not apply to a Chapter 7 trustee or Chapter 11 operating trustee.

12.     Events of Default/Termination Date. Unless Lender otherwise agrees in writing, this Stipulation shall terminate (the "Termination Date") upon the earliest of any of the following Events of Default after three (3) business days' written notice  (the "Remedies Notice Period") from the Lender to the Debtors (which may be via email between counsel), with a copy to the Office of the United States Trustee, with an opportunity to cure solely within the Remedies Notice Period: (a) the Debtors' failure to perform any of the terms, provisions, and covenants under this Order; (b) default by the Debtors in timely making Adequate Protection Payments or monthly financial reporting as required under this Order and/or the US Trustee guidelines; or (c) June 30,

111197165.4

2026.  During the Remedies Notice Period, the Debtors shall be permitted to use Cash Collateral solely to fund operating expenses in accordance with the Budget.  On the Termination Date, (a) Lender's consent to use Cash Collateral shall be deemed withdrawn and (b) the Debtor's authorization to use Cash Collateral for any purpose shall be terminated. The post-Termination Date carve out for professionals shall be capped at $250,000, subject to Court approval of the underlying fees and expenses.

13.     No Liability to Third-Parties. In authorizing the Debtors' use of Cash Collateral under the terms set forth herein in this Stipulation and Order, the Lender (i) shall have no liability to any third-party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtors, their creditors or their estates.

14.     Challenge Period. While the Debtors acknowledge the extent, validity and priority of the Senior Secured Loans and Claims, any creditor, committee or other parties-in-interest with appropriate standing may investigate the facts and file a complaint or an objection to the Lender's claim within thirty (30) days from the entry of this Order (the "Challenge Deadline"). Additionally in the event of the appointment of Chapter 7 trustee or an appointment of an operating trustee under section 1104, the ensuing trustee shall have 30 days from his or her appointment to investigate and to challenge the Senior Secured Loans and Claims. Following the expiration of the Challenge Deadline, (i) the Debtors' obligations under the underlying loan agreements shall constitute allowed secured claims against the Debtors in these Chapter 11 Cases and any successor

111197165.4

cases; (ii) the liens securing the Secured Senior Secured Liens and Claims and the Replacement Liens shall forever be deemed to be legal, valid, binding, continuing, perfected, and enforceable, as of the Petition Date, against the Debtors in these Chapter 11 Cases and any successor cases; (iii) the Debtors' prepetition obligations to the Lender shall not be subject to any other or further challenge, avoidance, recharacterization or subordination (whether equitable, contractual, or otherwise); and (iv) any and all challenges, of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against the Lender shall be deemed forever waived, released, and barred. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any challenge described in this paragraph.

15.     _Binding Effect of Stipulation and Order_. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Stipulation and Order shall become valid and binding upon the Debtors and the Debtors' estates.

16.     _Retention of Jurisdiction_. This Court shall retain jurisdiction to enforce this Stipulation and Order and determine any disputes arising hereunder.

17.     _Conflicts_. To the extent there exists any conflict between provisions of this Stipulation and Order and the terms of the loan documents between the Lender and the Debtors, the provisions of this Stipulation and Order shall govern.

18.     _Final Hearing_. A final hearing to consider entry of this Stipulation and Order shall be conducted in June __, 2026 at __:__ _.m.

10

111197165.4

**Exhibit A**

**YesCare / CHS Cash Collateral 13 Week Budget**

| Week Number:<br>Week Ended: | 5/22/2025 | 5/29/2025 | 6/5/2025 | 6/12/2025 | Total |
|---|---|---|---|---|---|
| Accounts Receivable | | | | | |
| Indicates - Assumed / known termination in period | | | | | |
| Indicates - Pays in Arrears | | | | | |
| Infusions: | | | | | |
| ABL | | | | | |
| **Total Operating Receipts** | **7,510,510** | **3,499,200** | **4,473,945** | **6,640,362** | **22,124,017** |
| | | | | | |
| **Operating Disbursements** | | | | | |
| | | | | | |
| Payroll & benefits | **7,607,677** | **2,756,223** | **1,890,600** | **5,043,935** | **17,298,435** |
| | | | | | |
| Independent Contractors | - | 75,000 | 100,000 | 100,000 | 275,000 |
| Offsite Providers | - | 150,000 | 150,000 | 150,000 | 450,000 |
| | | | | | |
| Pharmacy | 100,000 | 100,000 | 100,000 | 100,000 | 400,000 |
| Timi (assume prepaid) | - | 225,000 | - | 225,000 | 450,000 |
| Professional Liability | - | - | - | - | |
| Medical Supplies | 25,000 | 25,000 | 25,000 | 25,000 | 100,000 |
| Utilities | 60,000 | | | | 60,000 |
| Other Expenses | 40,000 | 40,000 | 40,000 | 30,000 | 150,000 |
| Taxes | | | | 1,450,203 | 1,450,203 |
| 401(k) Match | | | | - | - |
| Accrued PTO | | | | - | - |
| Delayed Payroll Offset | | | | - | - |
| Other | | | | | |
| **Total Operating Disburser** | **7,832,677** | **3,371,223** | **2,305,600** | **7,124,138** | **20,633,638** |
| | | | | | |
| **Non-Operating/Bankruptcy Receipts/(Disbursements)** | | | | | |
| | | | | | |
| Restructuring Professional Fees - Company | | | | 200,000 | 200,000 |
| Restructuring Professional Fees - DIP Lender | | | | | - |
| Restructuring Professional Fees - UCC | | | | 50,000 | 50,000 |
| CRO/Financial Advisor Fees | | | | 75,000 | 75,000 |
| Claims Agent and Publicati | 35,680 | | | 25,000 | 60,680 |
| Ombudsman Fees | | | | - | - |
| UST Fees | | | | | - |
| | | | | | |
| **Total Non-Operating/Bank** | **35,680** | **-** | **-** | **350,000** | **385,680** |
| | | | | | |
| **Net Cash Flow** | **(357,847)** | **127,977** | **2,168,345** | **(833,776)** | **1,104,699** |
| | | | | | |
| Cash Balance - Beginning | 363,993 | 6,146 | 134,123 | 2,302,468 | |
| Net Cash Flow | (357,847) | 127,977 | 2,168,345 | (833,776) | |
| **Ending Cash Balance** | 6,146 | 134,123 | 2,302,468 | 1,468,692 | |