UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CHS FL, LLC, *et al.*[1] | Case No. 2:26-bk-01087-FMR<br>*Jointly Administered* |
| Debtors. | |

/

**THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE'S
EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) HOLDING CHS EMPLOYEE GROUP LLC AND ISAAC LEFKOWITZ IN
CONTEMPT AND (II) COMPELLING DISCOVERY**

**(Related to Doc. Nos. 254 & 288)
EMERGENCY HEARING REQUESTED**

The Statutory Unsecured Claimholders' Committee (the "Committee") of CHS FL, LLC

and its affiliated debtors and debtors-in-possession (the "Debtors") moves pursuant to Fed. R. Civ.

P. 37 and 45, Fed. R. Bankr. P. 7037, 9014, 9016, and 9020, and Local Rules 7026-1 and 7037-1

for entry of an Order substantially in the form attached hereto as **Exhibit A**, holding CHS

Employee Group LLC ("CHSEG") and Yitzchak Lefkowitz a/k/a Isaac Lefkowitz ("Lefkowitz")

in contempt for violating the Court's *Order Granting the Statutory Unsecured Claimholders'*

*Committee's Amended Emergency Motion to Compel Discovery From CHS Employee Group LLC*

[Docket No. 288] (the "Order Compelling Discovery") and states:

---

[1] The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112.  The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

## LOCAL RULE 7026-1(d) CERTIFICATION

Undersigned counsel certifies that he attempted in good faith to confer with CHSEG prior to filing this Motion.  CHSEG and Lefkowitz have intentionally made such attempts difficult: they are unrepresented and have refused to provide any telephone number or address for service.  The only contact information available is the email address from which Lefkowitz responded to the Committee's June 8, 2026 *Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding)* [Docket No. 188] (the "Subpoena"): il@correct.health.  Because telephonic contact was impossible, counsel communicated exclusively via that email address.

On July 1, 2026, counsel served a letter upon CHSEG and Lefkowitz via the aforementioned email identifying the deficiencies in CHSEG's response to the Subpoena and requesting a meet and confer that same day at 5:00 p.m. (ET). Counsel followed up by sending a Microsoft Teams meeting invitation with a calendar link for a virtual conference at that time. Counsel then attended the scheduled meeting, but neither Lefkowitz nor any representative of CHSEG appeared.

On July 2, 2026, undersigned counsel again emailed Lefkowitz at his email address, but did not receive a response.

Finally, undersigned counsel served this Motion upon: (a) CHSEG and Lefkowitz at the il@correct.health email address; (b) CHSEG's registered agent by overnight mail; and (c) upon Lefkowtiz at his home address.  Undersigned counsel has fully complied with Local Rule 7026-1.

### PRELIMINARY STATEMENT[2]

1. Lefkowitz—the Debtors' principal and ultimate equity holder—continues to defy this Court's authority and disrespect the bankruptcy process. As set forth in the Venue Transfer Motion,[3] Lefkowitz has a well-documented history of ignoring court orders and acting however he sees fit, including disregarding his obligations under the $50,000,000 settlement incorporated in the *Tehum* bankruptcy's confirmed plan.[4] Now, through CHSEG—an entity he also owns and controls—Lefkowitz has blatantly violated the Order Compelling Discovery entered just last week.

2. As the Court is aware, the Committee was forced to compel compliance with the Subpoena because Lefkowitz ignored it and failed to cause CHSEG to produce documents or appear for deposition. After the Court entered the Order Compelling Discovery, Lefkowitz sent an email purporting to satisfy CHSEG's obligations under the Subpoena. But his response is a farce: (i) *one* responsive document in answer to 24 document requests, and (ii) a document containing "N/A," "Debtor has it," or "MSA" as written responses. Those non-answers mock the Federal Rules and this Court's authority. The Court cannot reward such defiance.

3. The Committee therefore files this Motion to hold CHSEG and Lefkowitz accountable and to ensure Lefkowitz and his cohort of related parties cannot continue these games. The Court should hold CHSEG and Lefkowitz in contempt for failure to obey the Order Compelling Discovery.

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them in this Motion.

[3] The "Venue Transfer Motion" refers to the *Tehum Care Services, Inc.'s, By and Through Matthew J. Dundon in his Capacity as the Wind-Down Officer, and Matthew J. Dundon's, in his Capacity as GUC Trustee of the Tehum GUC Trust, Emergency Motion to Transfer Venue to the Southern District of Texas* [Docket No. 26].

[4] Further, just this week the Committee learned that Lefkowitz took approximately $360,000 from Debtors' DIP account for his personal benefit and without any authority. Debtors have demanded the return of those funds, but Lefkowitz has refused.

## BACKGROUND

3.    **The Petition Date.**  On May 8, 2026 and May 13, 2026, as applicable, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On May 28, 2026, the United States Trustee for Region 21 appointed the Committee.  *See* Docket No. 137.

5.    **The Wages Motion.**  On May 8, 2026, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* [Docket No. 10] (the "Wages Motion"). The Wages Motion provided, among other things, that "the Debtors do not directly employ any employees, rather the Debtors lease their employees from a non-Debtor affiliate, CHS Employee Group LLC." Wages Motion, ¶ 8.

6.    **The Committee's Subpoena.**    On June 8, 2026, the Committee issued the Subpoena to CHSEG requesting to depose a designated representative of CHSEG on the topics identified in Schedule A to the Subpoena and production of the documents identified on Schedule B to the Subpoena.  *See* **Exhibit B**.[5]  The Committee requested compliance with the Subpoena by no later than June 15, 2026 at 10:00 a.m. (ET) (the "Subpoena Response Deadline").  Following the issuance of the Subpoena, the Committee requested that the Debtors accept service on behalf of

---

[5] The Committee believes it has satisfied Local Rule 7037-1 under the circumstances by attaching the Subpoena in its entirety to this Motion.

CHSEG, or assist in arranging service on CHSEG, given their common ownership with CHSEG and status as contract counterparties with CHSEG. *See* Motion to Compel,[6] Ex. B.

7. On June 9, 2026, the Subpoena was properly served on CHSEG's registered agent. *See* Motion to Compel, Ex. C.

8. On June 11, 2026, the Debtors informed the Committee that they would not accept service on behalf of CHSEG and have not provided the Committee with any assistance in ensuring CHSEG's compliance with the Subpoena. *See* Motion to Compel, Ex. D.

9. The Committee did not receive a response from CHSEG prior to the Subpoena response deadline. Accordingly, on June 19, 2026, the Committee filed the Motion to Compel, seeking to compel CHSEG to comply with the Subpoena.

10. **The Court Issues the Order Compelling Discovery.** On June 23, 2026, the Court held a hearing on the Motion to Compel and granted the relief requested by the Committee. On June 24, 2026, the Court entered the Order Compelling Discovery, requiring CHSEG to (i) "make available to the Committee a corporate designee to sit for a deposition concerning the topics identified in Schedule A to the Subpoena at 10:00 a.m. (ET) on June 26, 2026" and (ii) "produce all documents in its possession or control that are responsive to the requests identified in Schedule B to the Subpoena by no later than 10:00 a.m. (ET) on June 25, 2026." Order Compelling Discovery, ¶¶ 2-3.

11. **Lefkowitz's Contumacious Response.** On June 24, 2026, Lefkowitz emailed counsel for the Committee purporting to provide CHSEG's responses to the Subpoena (the "Lefkowitz Email"). *See* **Exhibit C**. As this Court is aware, Lefkowitz serves as the sole director

---

[6] The "Motion to Compel" shall refer to *The Statutory Unsecured Claimholders' Committee's Amended Emergency Motion to Compel Discovery From CHS Employee Group LLC* [Docket No. 254].

of Debtors and, upon information and belief, is the ultimate owner of the YesCare family of entities. *See Voluntary Petitions* [Docket No. 1].[7]

12. In a display of calculated disrespect, Lefkowitz addressed his email to "Mr. Lazar"—a deliberate misspelling of undersigned counsel's name. In addition to that intentional name mangling, Lefkowitz attached two documents—not to comply with the Court's Order Compelling Discovery, but to create the appearance of compliance while producing nothing of substance.

13. First, Lefkowitz attached a modified version of the Subpoena in which he wrote three types of answers in response to 24 separate document requests (the "Subpoena Responses"): (i) "MSA", (ii) "N/A", and (iii) "Debtor has it," as demonstrated in the snippet below:

> 8. Documents sufficient to identify (i) the current assets and liabilities of CHS Group and (ii) the aggregate amount of cash held in any bank accounts maintained by CHS Group. N/A
>
> 9. Documents sufficient to identify how funds flow from the Debtors, Non-Debtors, CFG Health, or any other entity to CHS Group and then to the Leased Employees, including any invoices, payment schedules, or funding agreements. Debtor has it
>
> 10. Documents sufficient to identify all bank accounts owned or controlled by CHS Group. Debtor has it
>
> 11. Documents sufficient to identify all transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees. N/A

*See* **Exhibit D**.

14. Second, Lefkowitz produced a single document: the *Related Entity Services Agreement* by and between CHSEG and Debtor YesCare Corp., which the Committee had previously received from the Debtors weeks prior to the Lefkowitz email. *See* **Exhibit E**.

---

[7] Lefkowitz executed the *Unanimous Written Consent of the Board of Directors* for each Debtor.

15.     Critically, Lefkowitz's contumacious response contained no objections.  Under Rule 45, "failure to serve written objections to a subpoena in the time provided . . . waives any objections." *Trika v. Toll Bros.*, No. 2:22-CV-552-JLB-KCD, 2023 WL 4536359, at \*1 (M.D. Fla. July 13, 2023).  CHSEG has therefore waived all objections to the Subpoena and must produce every responsive document in its possession or control—exactly as the Court ordered.

16.     Given Lefkowitz's incomplete and evasive responses to the Subpoena and his failure to comply with the Federal Rules, the Bankruptcy Rules, and the Court's Order Compelling Discovery, the Committee could not go forward with a deposition.

17.     On July 1, 2026, the Committee sent Lefkowitz a letter requesting to meet and confer regarding CHSEG's deficiencies and demanding that he cure CHSEG's deficient Subpoena Response.  *See* **Exhibit F**.  The Committee made its intent clear: comply with the Subpoena and the Order Compelling Discovery, or face a contempt motion.

18.     Lefkowitz failed to appear at the scheduled meet and confer.  And subsequent attempts to meet and confer were ignored.

## RELIEF REQUESTED

19.     By this Motion, the Committee requests that the Court enter the Proposed Order holding CHSEG and Lefkowitz in contempt, and awarding the following sanctions:

a) Fines against CHSEG and Lefkowtiz in the amount of $1,000 per day for each day of non-compliance, doubling each week thereafter (*i.e.,* $2,000/day in week two, $4,000/day in week three, etc.) until they fully comply with the Order Compelling Discovery;

b) Holding Lefkowitz personally liable for all fines imposed against CHSEG, given his role as the sole director and controlling person of CHSEG and his direct participation in CHSEG's defiance of the Court's orders;

c)  Reserving the right to order the civil incarceration of Lefkowitz until CHSEG complies with the Court's orders, should the foregoing sanctions prove insufficient to compel compliance;

d)  Awarding the Committee its reasonable attorneys' fees and costs incurred in connection with this Motion and CHSEG's failure to comply with the Subpoena and Order Compelling Discovery, to be assessed against CHSEG and Lefkowitz;

e)  Authorizing the Committee to seek adverse inferences against CHSEG and Lefkowitz at any hearing or trial in these Chapter 11 Cases based on their failure to produce documents responsive to the Subpoena;

f)  Precluding CHSEG and Lefkowitz from filing any pleadings, motions, or proofs of claim, or otherwise participating in these Chapter 11 Cases until it fully complies with the Subpoena and the Order Compelling Discovery; and

g)  Compelling CHSEG and Lefkowitz to (i) produce all documents responsive to the Subpoena within two (2) days of entry of an order on this Motion and (ii) make a corporate designee available for deposition within four (4) days of entry of an order on this Motion.

## BASIS FOR RELIEF REQUESTED

20.  Under Federal Rule 37(b)(2)(A)(vii), where a party fails to comply with a discovery order, this Court may enter an order "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed R. Civ. P. 37(b)(2)(A)(vii). This court has "has extremely broad and flexible powers" in the area of civil contempt and may many kinds of sanctions, including daily fines. *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1196 (11th Cir. 2016) (affirming civil contempt order against a company for failure to produce documents in response to subpoena and imposing fine of $500 per day day). Additionally, *individuals* responsible for the affairs of a

corporation can be individually held in contempt for disobeying a[n] . . . order." *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1213 (11th Cir. 2019).

21.     Further, Federal Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* 37(a)(4). Courts have found the scope of discovery under Federal Rule 45 to be the same as Federal Rule 34, and therefore, when determining whether a response to a subpoena satisfies the requirements of the Federal Rules, courts have borrowed the requirements of Federal Rule 34. *See, e.g., Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) ("[T]he Court concludes that, just as Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34."); *see also Commissariat A L'Energie Atomique v. Samsung Elecs. Co.*, No. 8:06MC44T30TBM, 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006) ("The scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."). Thus, a response to a document request made through a subpoena will not be considered complete unless it identifies, among other things: (a) whether the party is in possession of responsive documents, (b) whether the party objects to the request(s), (c) whether responsive documents will be produced in response to the request(s), and/or (d) whether responsive documents are being withheld. *See* Fed. R. Civ. P. 34(b)(2).

22.     The Subpoena Response fails the Federal Rules on every count. CHSEG did not state whether it possesses responsive documents, whether it objects, whether it will produce, or whether it is withholding anything. Instead, Lefkowitz scrawled three words across 24 document requests: "N/A," "Debtor has it," or "MSA." These are not answers—they are evasions. Under

Federal Rule 37(a)(4), the Subpoena Response must be treated as no response at all.  CHSEG has therefore violated the Order Compelling Discovery, and contempt is warranted.

23.    What's more, in addition to providing incomplete and evasive answers to the Subpoena, the Committee believes that CHSEG willfully violated the Federal Rules and the Order Compelling Discovery by intentionally failing to produce documents it has in its possession or control.  By way of example, the Subpoena Response states "N/A" or "Debtor has it" for the following document requests:

> 4.    Documents sufficient to identify all direct and indirect equity holders of [CHSEG].
>
> 10.    Documents sufficient to identify all bank accounts owned or controlled by [CHSEG].
>
> 11.    Documents sufficient to identify all transfers made by [CHSEG] to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees.
>
> 23.    All federal and state tax returns of [CHSEG].[8]

24.    Each of these requests are non-controversial documents that would plainly be in the possession or control of CHSEG.  But instead of making a good faith effort to produce such documents, CHSEG appears to be willfully failing to comply with the Subpoena and ignoring the Order Compelling Discovery—actions worthy of a contempt finding on their own.  *See Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982) (affirming contempt finding where party "willfully flouted court ordered discovery").  Thus, the Committee submits that there is ample support to hold CHSEG and Lefkowitz, in his individual capacity, in contempt and impose the sanctions more fully set forth above.

---

[8] *See* Ex. C.

**WHEREFORE**, the Committee respectfully requests that this Court enter the Proposed Order: (i) granting this Motion; (ii) holding CHSEG and Lefkowitz in civil contempt; (iii) fining CHSEG and Lefkowitz $1,000 per day for non-compliance, doubling each week thereafter; (iv) holding Lefkowitz personally liable for all fines imposed against CHSEG; (v) reserving the right to order Lefkowitz's civil incarceration if sanctions prove insufficient; (vi) awarding the Committee its reasonable attorneys' fees and costs, to be assessed against CHSEG and Lefkowitz; (vii) authorizing the Committee to seek adverse inferences against CHSEG and Lefkowitz; (viii) precluding CHSEG and Lefkowitz from participating in these Chapter 11 Cases until full compliance; (ix) compelling CHSEG and Lefkowitz to produce all responsive documents within two (2) days of entry of an order on this Motion and make a corporate designee available for deposition within four (4) days of entry of an order on this Motion; and (x) granting such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated : July 2, 2026
Miami, Florida

**COLE SCHOTZ P.C.**

*/s/ Luis Salazar*
Luis Salazar, Esq. (Florida Bar No. 147788)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
Sarah A. Carnes, Esq. (admitted *pro hac vice*)
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
lsalazar@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com

- and -

**PROSKAUER ROSE LLP**

Brian Rosen, Esq. (admitted *pro hac vice*)
Ehud Barak, Esq. (admitted *pro hac vice*)
Daniel Desatnik, Esq. (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

- and -

Paul Possinger, Esq. (admitted *pro hac vice*)
Jordan Sazant, Esq. (admitted *pro hac vice*)
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
ppossinger@proskauer.com
jsazant@proskauer.com

*Proposed Counsel to the Statutory Unsecured*
*Claimholders' Committee to CHS FL, LLC, et al.*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, July 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in this case and parties in interest registered to receive notices via transmission of Notices of Electronic Filing generated by CM/ECF.  I further certify that the foregoing document was served via first class mail, postage-prepaid and Federal Express, overnight delivery, on the following:

CHS Employee Group LLC
c/o CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

CHS Employee Group LLC
c/o Alan Rubenstein, Managing Member
205 Powell Place, Suite 104
Brentwood, TN 37027

Yitzchak Lefkowitz a/k/a Isaac Lefkowitz
1528 56th Street, Apt. 1
Brooklyn, New York 11219

I further certify that the foregoing document is being served this day via electronic mail on the following:

CHS Employee Group LLC
c/o Yitzchak Lefkowitz a/k/a Isaac Lefkowitz
il@correct.health

*/s/ Luis Salazar*_____
Luis Salazar

# EXHIBIT A

# Proposed Order

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter 11

CHS FL, LLC, *et al.*[1]                        Case No. 2:26-bk-01087-FMR
                                                *Jointly Administered*

        Debtors.

_____/

**ORDER (I) HOLDING CHS EMPLOYEE GROUP LLC AND ISAAC LEFKOWITZ
IN CONTEMPT AND (II) COMPELLING DISCOVERY**

Upon consideration of *The Statutory Unsecured Claimholders' Committee's Emergency Motion for Entry of an Order (I) Holding CHS Employee Group LLC and Isaac Lefkowitz in Contempt and (II) Compelling Discovery* [Docket No. ___] (the "Motion")[2] pursuant Federal Rules 37 and 45, Bankruptcy Rules 7037, 9014, 9016, and 9020, and Local Rules 7026-1 and 7037-1, seeking entry of an Order, *inter alia*, (i) holding CHS Employee Group LLC and Lefkowitz in contempt for violating the Order Compelling Discovery and (ii) compelling CHSEG to comply

---

[1] The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112.  The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

[2] Capitalized terms used in this Order shall have the meanings ascribed to them in the Motion.

with the Subpoena; and all pleadings related thereto; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Committee having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances, and no further notice needing be provided; and the Court having reviewed the Motion and having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby

**ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. CHSEG and Lefkowitz are in **CIVIL CONTEMPT** of this Court.

3. CHSEG and Lefkowitz may purge themselves of civil contempt by:

    (a) making available to the Committee a corporate designee to sit for a deposition concerning the topics identified in Schedule A to the Subpoena within four (4) days of entry of this Order, at a time and place to be designated by Committee counsel; and

    (b) producing all documents in its possession or control that are responsive to the requests identified in Schedule B of the Subpoena within two (2) days of entry of this Order.

4. CHSEG and Lefkowitz will be sanctioned $1,000 per day for each day of non-compliance with this Order, doubling each week thereafter (*i.e.,* $2,000 per day in week two, $4,000 per day in week three, etc.), beginning upon expiration of the compliance deadlines set

2

forth in Paragraph 3 of the Order.  Lefkowitz shall be personally liable for all fines imposed by the Court on CHSEG under this Order.

5.      The Court may impose other or additional sanctions against CHSEG and Lefkowitz if they fail to comply with this Order, including, without limitation, civil incarceration of Lefkowitz if the fines provided for herein prove insufficient.

6.      The Committee may seek adverse inference findings against CHSEG and Lefkowitz in any future evidentiary hearing based on their failure to produce documents responsive to the Subpoena.

7.      CHSEG and Lefkowitz shall pay the Committee's reasonable attorneys' fees and costs incurred in connection with the Motion and CHSEG's failure to comply with the Subpoena and Order Compelling Discovery within fourteen (14) calendar days of entry of this Order.

8.      CHSEG and Lefkowitz are precluded from filing any pleadings, motions, objections, responses, proofs of claim, or other papers in these Chapter 11 Cases, and is further precluded from otherwise participating in these Chapter 11 Cases in any capacity unless and until CHSEG and Lefkowitz fully comply with the Subpoena and the Order Compelling Discovery. The Clerk of Court shall not accept for filing any pleadings, motions, proofs of claim, or other submissions tendered by CHSEG and Lefkowitz, and any filing submitted in violation of this Order may be rejected or stricken without further notice or hearing unless otherwise expressly authorized by further Order of this Court.

9.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Attorney Luis Salazar is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

3

# **EXHIBIT B**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Middle _____ District of _____ Florida _____

In re CHS FL, LLC, et al. _____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. ____26-01087-FMR____

Chapter ____11____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: CHS Employee Group LLC, (c/o C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FLORIDA 33324)
*(Name of person to whom the subpoena is directed)*

■ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE: | DATE AND TIME |
|---|---|
| Video Conference | June 15, 2026 at  10:00 a.m. |

The deposition will be recorded by this method:

Stenography.

■ *Production*:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Schedule B

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ____06/08/26____

CLERK OF COURT

OR

_____                    /s/ Luis Salazar
_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
The Statutory Unsecured Claimholders' Committee  , who issues or requests this subpoena, are:

Luis Salazar, Esq., Cole Schotz P.C., 2121 SW 3rd Avenue, #200, Miami, FL 33129, lsalazar@coleschotz.com, 305-374-4848

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*:
on *(date)*                    .

☑ I served the subpoena by delivering a copy to the named person as follows:


on (*date*) _____ ; or


☐ I returned the subpoena unexecuted because: _____


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $                         _____ .

 My fees are $              for travel and $              for services, for a total of $              .


     I declare under penalty of perjury that this information is true and correct.

Date:


*Server's signature*


*Printed name and title*


*Server's address*


Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHS FL, LLC, *et al.*[1] | Case No. 2:26-bk-01087-FMR |
|  | *Jointly Administered* |
| Debtors. | |

_____ /

**THE STATUTORY UNSECURED CLAIMHOLDERS'
COMMITTEE'S NOTICE OF TAKING DEPOSITION
*DUCES TECUM* OF CHS EMPLOYEE GROUP LLC**

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, as made applicable by Rule 7030 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Bankruptcy Rule 9014, and Rule 7030-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), the Statutory Unsecured Claimholders' Committee (the "Committee") of CHS FL, LLC, *et al.* (the "Debtors") will examine, under oath, the following individual and/or entity (the "Deponent"), at the following date, time, and location as specified below.

| **Person** | **Location** | **Date & Time** |
|---|---|---|
| The designated Corporate Representative of CHS Employee Group LLC (the "Designated Representative"), with the most knowledge concerning the topics and matters set forth in the attached **Schedule A**. | Video Conference via Zoom Video Communications, Inc. | June 15, 2026, at 10:00 a.m. (ET), or at another time mutually agreed upon by the parties |

---

[1]    The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112.  The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

The deposition will take place via video conference, which will require all participants to have access to an internet connection and a computer with a webcam. The Deponent will be provided with access information prior to the commencement of the deposition. The deposition will be recorded by video and stenographic means by a certified court reporter, Notary Public for the State of Florida at large, or some other person or officer authorized to record the testimony. The deposition will continue until completed or adjourned.

The deposition will be taken for purposes of discovery, preservation of testimony, for use at trial, and any other purposes permitted by the Federal Rules of Civil Procedure, the Bankruptcy Rules, the Federal Rules of Evidence, the Local Rules, or other applicable law. Any objection must be heard prior to the taking of the deposition. The Committee reserves the right to seek relief in the event the Designated Representative is not properly prepared to testify on the topics and matters set forth in the attached **Schedule A**, or the Deponent fails to produce the documents set forth on **Schedule B**.

The Committee reserves its right to issue other or further notices of deposition or serve additional discovery on the Deponent.

Dated:  June 8, 2026         **COLE SCHOTZ P.C.**
       Miami, Florida

*/s/ Luis Salazar*

Luis Salazar, Esq. (Florida Bar No. 147788)
Justin R. Alberto, Esq. (*pro hac vice* pending)
Sarah A. Carnes, Esq. (*pro hac vice* pending)
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
lsalazar@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com

*-and-*

**PROSKAUER ROSE LLP**

Brian Rosen, Esq. (*pro hac vice* pending)
Ehud Barak, Esq. (*pro hac vice* pending)
Daniel Desatnik, Esq. (*pro hac vice* pending)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

*-and-*

Paul Possinger, Esq. (*pro hac vice* pending)
Jordan Sazant, Esq. (*pro hac vice* pending)
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
ppossinger@proskauer.com
jsazant@proskauer.com

*Proposed Counsel to the Statutory Unsecured
Claimholders' Committee to CHS FL, LLC, et al.*

3

**SCHEDULE A**

In accordance with Federal Rule of Civil Procedure 30(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7030 and 9014(c), the Committee designates the matters identified below for examination.  In construing these topics, the following shall apply:

## I.    DEFINITIONS.

1.    The term "Communication" means any transmission of information by oral, graphic, written, pictorial or other perceptible means, including but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile, transmissions, electronic mail, meetings and personal conversations.

2.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

3.    The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations; provided, however, this term expressly excludes electronic mail, text messages, and other similar transmissions.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

4.    When referring to a natural person, "to identify" means to give, to the extent known, the person's full name, present or last known address and telephone number, and the person's present or last known place of employment.

5.    When referring to an entity other than a natural person, to "identify" means to give, to the extent known, the entity's full name, last known address and telephone number, date it was

organized, jurisdiction under which it was organized or incorporated, or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization.

6.    When referring to documents, to "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

7.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.    The use of the singular form of any word includes the plural and vice versa.

11.    "3C" shall mean West Kentucky Correctional Healthcare, LLC, d/b/a Comprehensive Correctional Care and any of its Affiliates or related entities.

12.    The term "Affiliate" or "Affiliates" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

13.    "Armor" shall mean Armor Correctional Health Services, Inc. and any of its Affiliates or related entities.

14.    "Board Materials" shall mean and refer to Documents (including drafts) created by or for, or provided to or considered by, the Board or any other similar governance body.

15.    "Budget" shall have the meaning ascribed to it in the Stipulation.

5

16.    "Chapter 11 Cases" shall mean and refer to the jointly administered chapter 11 cases pending before the United States Bankruptcy Court, Middle District of Florida, Fort Myers Division, captioned *In re CHS FL, LLC, et al.*, No. 2:26-bk-01087-FMR.

17.    "CFG Health" means CFG Health Systems, L.L.C. and any and all of its Affiliates and related entities.

18.    "CHS Group" shall mean CHS Employee Group LLC.

19.    "Contractors" shall mean the 17 independent contractors and 1 subcontractor referenced in the Wages Motion at paragraph 22.

20.    "Debtors" shall mean and refer to (i) CHS FL, LLC; (ii) CHS TX, Inc.; (iii) CHS AL, LLC; (iv) YesCare Corp.; (v) CHS Care NY, LLC; (vi) Corizon Health of New Mexico, LLC; and (vii) CHS Care TX, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

21.    "Employees" shall have the meaning ascribed to it in the Wages Motion.

22.    The term "Insider" or "Insiders" shall have the meaning ascribed to the term "Insider" under 11 U.S.C. § 101(31), and includes, without limitation, Yitzchok Lefkowitz a/k/a Isaac Lefkowitz, Joel Landau, David Gefner, Frank Jeffrey Sholey, Jeffrey Scott King, Sara Ann Tirschwell, Ayodeji Olawale Ladele a/k/a Gregory Ladele, Beverly Michelle Rice, James T. Sprouse, Jr., Alan Rubenstein, Michael Hagney, Zalman Schapiro, David Harrington, Brandon E. De Julius, Mary Silva, Latasha McMillan, and Elmeada Frias.

23.    "Leased Employees" shall mean, collectively, all Employees, Temporary Workers, and Contractors.

24.    "Lefkowitz" shall mean Yitzchok Lefkowitz a/k/a Isaac Lefkowitz.

25.    "Legacy Corizon Entities" shall mean M2 HoldCo, LLC; M2 LoanCo, LLC; M2 EquityCo, LLC; Valitas Intermediate Holdings, Inc.; M2 PharmaCorr Equity Holdings, LLC;

Valitas Health Services, Inc.; Corizon Health, Inc.; Corizon, LLC; Corizon Health of New Jersey, LLC; Pharmacorr/M2, LLC; Pharmacorr Holdings, LLC; Pharmacorr, LLC; and Endeavor Distribution, LLC.

26.    "NaphCare" shall mean NaphCare Operating LLC, NaphCare Alabama Prisons LLC, and any of their Affiliates or related entities.

27.    "Non-Debtors" shall mean any Affiliates, parents, successors, owners, assigns, and predecessors of the Debtors, including, without limitation, the Legacy Corizon Entities and Other Affiliate Entities.

28.    "Other Affiliate Entities" shall mean Correct Health Services, LLC; TN Correct Health Services LLC; Geneva Consulting LLC; Geneva Consultings LLC; CHS Employee Group LLC; United Staffing; CHS Staffing, LLC; CHS PA, LLC; CHS MA, LLC; Corizon, LLC; YesCare Holdings LLC; CHS GA, LLC; CHS AZ, LLC; CHS IN, LLC; CHS MO, LLC; CHS KS, LLC; CHS NH, LLC; CHS New Jersey; CHS TN, LLC; YesCare AR, LLC; CHS IL, LLC; CHS MN, LLC; CHS VA, LLC; M2 LoanCo; M2 HoldCo, LLC; M2 EquityCo, LLC; SIGMA Risk Management, LLC; CFG Health Systems, LLC; CFG Medical Services PA, PLLC; Geneva Health P.A.; Pinta Capital; Perigrove LLC; Perigrove 1018, LLC; Adar Management, LLC; and any Affiliates, parents, successors, owners, assigns, and predecessors of any of the Debtor or Non-Debtor entities identified herein, including any entities Lefkowitz or any other Insider is a director or officer of, or directly or indirectly owns and/or controls.

29.    "Petition Date" shall mean May 8, 2026 with respect to CHS FL, LLC, YesCare Corp., CHS TX, Inc., and CHS AL, LLC and May 13, 2026 with respect to CHS Care NY, LLC; Corizon Health of New Mexico, LLC; and CHS Care TX, LLC.

30.    "Staffing Agencies" shall have the meaning ascribed to it in the Wages Motion.

7

31.    "Stipulation" shall mean the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection* filed at docket no. 81-1 in the Chapter 11 Cases.

32.    "TN Services" shall mean TN Correct Health Services, LLC.

33.    "Temporary Workers" shall have the meaning ascribed to it in the Wages Motion.

34.    "Wages Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* filed at docket no. 10 in the Chapter 11 Cases.

## II.    INSTRUCTIONS.

1.    Pursuant to Federal Rule 30(b)(6), made applicable in these proceedings by Bankruptcy Rule 7030, You are directed to testify on Your behalf about information known or reasonably available to You regarding the below topics.

2.    You shall set forth, for each person designated, the matters on which the person will testify.

3.    The person(s) so designated shall testify as to information known or reasonably available to You regarding the below topics.

## III.    AREAS OF INQUIRY.

The Deponent shall be prepared to address the following areas of inquiry:

1.    All facts and Documents concerning agreements by and between the Debtors and CHS Group, including, without limitation, any employee leasing agreements, staffing agreements, management services agreements, or similar contracts or arrangements.

2. All facts and Documents concerning agreements by and between CHS Group and any Non-Debtors, CFG Health, or any other party, related to the Leased Employees.

3. All facts and Documents concerning the aggregate prepetition amounts owed by the Debtors to CHS Group as of the Petition Date.

4. All facts and Documents concerning all direct and indirect equity holders of CHS Group.

5. All facts and Documents concerning the current and historical corporate organizational structure of CHS Group and its Affiliates, including without limitation, the Debtors, TN Services, and any Staffing Agencies.

6. All facts, Documents, and Communications concerning any organizational changes or proposed organizational changes.

7. All facts and Documents concerning all current and former individual directors, officers, and executives of CHS Group and its Affiliates, including without limitation, their affiliation to any of the Non-Debtors, whether historically or currently, including such persons' (i) title at CHS Group (or its Affiliates), (ii) tenure at CHS Group (or its Affiliates), (iii) name of the corresponding Non-Debtor(s), and (iv) role at the corresponding Non-Debtors.

8. All facts and Documents concerning (i) the current assets and liabilities of CHS Group and (ii) the aggregate amount of cash held in any bank accounts maintained by CHS Group.

9. All facts and Documents concerning the flow of funds from the Debtors, Non-Debtors, CFG Health, or any other entity to CHS Group and then to the Leased Employees, including any invoices, payment schedules, or funding agreements.

10. All facts and Documents concerning bank accounts owned or controlled by CHS Group.

11. All facts and Documents concerning transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees.

12. All facts and Documents concerning each Leased Employee's (i) name; (ii) title; (iii) role; (iv) assigned facility; (v) agreements related to providing services to the Debtors; and (vi) amount owed for providing services to the Debtor prior to the Petition Date.

13. All facts and Documents concerning any Leased Employees' status as an Insider of the Debtors.

14. All facts and Documents concerning the direction and supervision of the Leased Employees' day-to-day activities.

15. All facts and Documents concerning the services provided by the Leased Employees to the Debtors prior to the Petition Date and/or following the Petition Date.

16. All facts and Documents concerning the services provided by the Leased Employees to any Non-Debtors, Insiders of the Debtors, or CFG Health prior to the Petition Date and/or following the Petition Date.

17. All facts and Documents concerning the amount and recipients of payments proposed to be made by CHS Group to any Leased Employees for services rendered following the Petition Date, including, without limitation, those to paid pursuant to the Budget, or any other budget filed in connection with a debtor-in-possession financing motion or motion to use cash collateral filed in the Chapter 11 Cases.

18. All facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to any agreements with the Debtors, Non-Debtors, CFG Health, and/or NaphCare pertaining to the Leased Employees, including without limitation any negotiation of contract terms.

10

19.     All facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to contracts previously or currently held by Debtor entities including, without limitation, the transition of those contracts to other entities including without limitation the Non-Debtors, CFG Health, and NaphCare.

20.     To the extent not captured above, all facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders with any entities that currently hold contracts once held by the Debtors, including, without limitation, CFG Health, NaphCare, Wellpath, 3C, or Armor.

21.     All facts and Documents concerning audited or unaudited annual financial statements, or monthly financial statements of CHS Group.

22.     All facts and Documents concerning federal and state tax returns of CHS Group.

23.     All facts and Documents concerning Board Materials, including minutes, resolutions (and all related schedules), reports, analyses, and presentations related to the Leased Employees.

**SCHEDULE B**

Pursuant to Rules 9014 and 9016 of the Federal Rules of Bankruptcy Procedure, Rule 45 of the Federal Rules of Civil Procedure, and Rule 9016-1 of the Local Bankruptcy Rules of the Middle District of Florida, the Statutory Unsecured Claimholders' Committee of CHS FL, *et al.*, by and through its undersigned proposed counsel, requests that CHS Employee Group LLC produce legible copies of the documents and information requested herein to Cole Schotz P.C., 2121 SW 3rd Avenue, Suite 200 Miami, FL 33129, Attn.: Luis Salazar, Esq., lsalazar@coleschotz.com.

**DEFINITIONS[2]**

1.      The term "Communication" means any transmission of information by oral, graphic, written, pictorial or other perceptible means, including but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile, transmissions, electronic mail, meetings and personal conversations.

2.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.

3.      The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations; provided, however, this term expressly excludes electronic mail, text messages, and other similar transmissions.  This includes documents stored in any medium from which information can be

---

[2]    Capitalized terms used but not defined in these definitions shall have the meanings ascribed to them later in these definitions.

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

4.      When referring to a natural person, "to identify" means to give, to the extent known, the person's full name, present or last known address and telephone number, and the person's present or last known place of employment.

5.      When referring to an entity other than a natural person, to "identify" means to give, to the extent known, the entity's full name, last known address and telephone number, date it was organized, jurisdiction under which it was organized or incorporated, or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization.

6.      When referring to documents, to "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

7.      The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.      The use of the singular form of any word includes the plural and vice versa.

11.      "3C" shall mean West Kentucky Correctional Healthcare, LLC, d/b/a Comprehensive Correctional Care and any of its Affiliates or related entities.

12. The term "Affiliate" or "Affiliates" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

13. "Armor" shall mean Armor Correctional Health Services, Inc. and any of its Affiliates or related entities.

14. "Board Materials" shall mean and refer to Documents (including drafts) created by or for, or provided to or considered by, the Board or any other similar governance body.

15. "Budget" shall have the meaning ascribed to it in the Stipulation.

16. "Chapter 11 Cases" shall mean and refer to the jointly administered chapter 11 cases pending before the United States Bankruptcy Court, Middle District of Florida, Fort Myers Division, captioned *In re CHS FL, LLC, et al.*, No. 2:26-bk-01087-FMR.

17. "CFG Health" means CFG Health Systems, L.L.C. and any and all of its Affiliates and related entities.

18. "CHS Group" shall mean CHS Employee Group LLC.

19. "Contractors" shall mean the 17 independent contractors and 1 subcontractor referenced in the Wages Motion at paragraph 22.

20. "Debtors" shall mean and refer to (i) CHS FL, LLC; (ii) CHS TX, Inc.; (iii) CHS AL, LLC; (iv) YesCare Corp.; (v) CHS Care NY, LLC; (vi) Corizon Health of New Mexico, LLC; and (vii) CHS Care TX, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

21. "Employees" shall have the meaning ascribed to it in the Wages Motion.

22. The term "Insider" or "Insiders" shall have the meaning ascribed to the term "Insider" under 11 U.S.C. § 101(31), and includes, without limitation, Yitzchok Lefkowitz a/k/a Isaac Lefkowitz, Joel Landau, David Gefner, Frank Jeffrey Sholey, Jeffrey Scott King, Sara Ann Tirschwell, Ayodeji Olawale Ladele a/k/a Gregory Ladele, Beverly Michelle Rice, James T.

14

Sprouse, Jr., Alan Rubenstein, Michael Hagney, Zalman Schapiro, David Harrington, Brandon E. De Julius, Mary Silva, Latasha McMillan, and Elmeada Frias.

23. "Leased Employees" shall mean, collectively, all Employees, Temporary Workers, and Contractors.

24. "Lefkowitz" shall mean Yitzchok Lefkowitz a/k/a Isaac Lefkowitz.

25. "Legacy Corizon Entities" shall mean M2 HoldCo, LLC; M2 LoanCo, LLC; M2 EquityCo, LLC; Valitas Intermediate Holdings, Inc.; M2 PharmaCorr Equity Holdings, LLC; Valitas Health Services, Inc.; Corizon Health, Inc.; Corizon, LLC; Corizon Health of New Jersey, LLC; Pharmacorr/M2, LLC; Pharmacorr Holdings, LLC; Pharmacorr, LLC; and Endeavor Distribution, LLC.

26. "NaphCare" shall mean NaphCare Operating LLC, NaphCare Alabama Prisons LLC, and any of their Affiliates or related entities.

27. "Non-Debtors" shall mean any Affiliates, parents, successors, owners, assigns, and predecessors of the Debtors, including, without limitation, the Legacy Corizon Entities and Other Affiliate Entities.

28. "Other Affiliate Entities" shall mean Correct Health Services, LLC; TN Correct Health Services LLC; Geneva Consulting LLC; Geneva Consultings LLC; CHS Employee Group LLC; United Staffing; CHS Staffing, LLC; CHS PA, LLC; CHS MA, LLC; Corizon, LLC; YesCare Holdings LLC; CHS GA, LLC; CHS AZ, LLC; CHS IN, LLC; CHS MO, LLC; CHS KS, LLC; CHS NH, LLC; CHS New Jersey; CHS TN, LLC; YesCare AR, LLC; CHS IL, LLC; CHS MN, LLC; CHS VA, LLC; M2 LoanCo; M2 HoldCo, LLC; M2 EquityCo, LLC; SIGMA Risk Management, LLC; CFG Health Systems, LLC; CFG Medical Services PA, PLLC; Geneva Health P.A.; Pinta Capital; Perigrove LLC; Perigrove 1018, LLC; Adar Management, LLC; and

15

any Affiliates, parents, successors, owners, assigns, and predecessors of any of the Debtor or Non-Debtor entities identified herein, including any entities Lefkowitz or any other Insider is a director or officer of, or directly or indirectly owns and/or controls.

29.     "Petition Date" shall mean May 8, 2026 with respect to CHS FL, LLC, YesCare Corp., CHS TX, Inc., and CHS AL, LLC and May 13, 2026 with respect to CHS Care NY, LLC; Corizon Health of New Mexico, LLC; and CHS Care TX, LLC.

30.     "Staffing Agencies" shall have the meaning ascribed to it in the Wages Motion.

31.     "Stipulation" shall mean the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection* filed at docket no. 81-1 in the Chapter 11 Cases.

32.     "TN Services" shall mean TN Correct Health Services, LLC.

33.     "Temporary Workers" shall have the meaning ascribed to it in the Wages Motion.

34.     "Wages Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* filed at docket no. 10 in the Chapter 11 Cases.

## INSTRUCTIONS

You are requested to produce all communications, documents and information requested herein that are within your possession, custody, or control or in the possession, custody, or control of your officers, directors, agents, employees, representatives, affiliated or associated companies, or any other person or entity acting or purporting to act on your behalf.

1.      Electronically stored information is to be produced in native format unless otherwise agreed between counsel or unless such information could not be retrieved or accessed with the use of commonly used commercial off-the-shelf software, in which event counsel is requested to contact the undersigned to discuss the form of production.  In addition, it is requested that all electronically stored information be produced as .TIFF images with Relativity/Concordance load files (.DAT and .OPT) and searchable text (*i.e.*, OCR).

2.      If the response to any production request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

3.      Pursuant to Fed. R. Civ. P. 26(b)(5)(A), if you assert a claim of privilege in responding or objecting to any production request, you must identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  If you withhold otherwise discoverable documents by claiming that the documents are privileged, you must describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

17

4.      If your response to any production request is any other objection, you must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

5.      If any document or communication responsive to these production requests has been destroyed, state when the document or communication was destroyed, identify the person who destroyed the document or communication, and the person who directed that it be destroyed. Additionally, detail the reasons for the destruction, describe the nature of the document or communication, identify the persons who created, sent, received, or reviewed the document or communication, and state in as much detail as possible the contents of the document.

6.      Documents and communications should be segregated according to the number of the request to which you are responding or produced in the manner they are kept in the ordinary course of business.

7.      To the extent there is no time period set forth in a specific request, there shall be no time limitation for such request.

8.      Pursuant to Fed. R. Civ. P. 26(e)(1), you must supplement or correct your responses to these requests in a timely manner if you learn that in some material respect the disclosure or response is incomplete or incorrect.

<u>**REQUESTS FOR PRODUCTION**</u>

1.      All agreements by and between the Debtors and CHS Group, including, without limitation, any employee leasing agreements, staffing agreements, management services agreements, or similar contracts or arrangements.

2.      All agreements by and between CHS Group and any Non-Debtors, CFG Health, or any other party, related to the Leased Employees.

18

3. Documents sufficient to identify the aggregate prepetition amounts owed by the Debtors to CHS Group as of the Petition Date.

4. Documents sufficient to identify all direct and indirect equity holders of CHS Group.

5. Documents sufficient to identify the current and historical corporate organizational structure of CHS Group and its Affiliates, including without limitation, the Debtors, TN Services, and any Staffing Agencies.

6. All Documents, Communications, and supporting analyses concerning any organizational changes or proposed organizational changes.

7. A schedule identifying all officers, directors, executives, or other stakeholders of CHS Group with any affiliation to any of the Non-Debtors, whether historically or currently, including such persons' (i) title at CHS Group (or its Affiliates), (ii) tenure at CHS Group (or its Affiliates), (iii) name of the corresponding Non-Debtor(s), and (iv) role at the corresponding Non-Debtors.

8. Documents sufficient to identify (i) the current assets and liabilities of CHS Group and (ii) the aggregate amount of cash held in any bank accounts maintained by CHS Group.

9. Documents sufficient to identify how funds flow from the Debtors, Non-Debtors, CFG Health, or any other entity to CHS Group and then to the Leased Employees, including any invoices, payment schedules, or funding agreements.

10. Documents sufficient to identify all bank accounts owned or controlled by CHS Group.

11. Documents sufficient to identify all transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees.

19

12. Documents sufficient to identify each Leased Employee's (i) name; (ii) title; (iii) role; (iv) assigned facility; (v) agreements related to providing services to the Debtors; and (vi) amount owed for providing services to the Debtor prior to the Petition Date.

13. Documents sufficient to identify which Leased Employees CHS Group believes qualify as Insiders of the Debtors.

14. Documents sufficient to identify who directs and supervises the Leased Employees' day-to-day activities.

15. Documents sufficient to identify (i) which Leased Employees are providing services to the Debtors pursuant to active contracts following the Petition Date and (ii) which Leased Employees ceased providing services to the Debtors prior to the Petition Date.

16. Documents sufficient to identify (i) which Leased Employees provided services to any Non-Debtors, Insiders of the Debtors, or CFG Health prior to the Petition Date and (ii) which Leased Employees are providing services to any Non-Debtors, Insiders of the Debtors, or CFG Health following the Petition Date.

17. Documents sufficient to identify the amount and recipients of payments proposed to be made by CHS Group to any Leased Employees for services rendered following the Petition Date, including, without limitation, those to paid pursuant to the Budget, or any other budget filed in connection with a debtor-in-possession financing motion or motion to use cash collateral filed in the Chapter 11 Cases.

18. All Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to any agreements with the Debtors, Non-Debtors, CFG Health, and/or NaphCare pertaining to the Leased Employees, including without limitation any negotiation of contract terms.

20

19.     All Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to contracts previously or currently held by Debtor entities including, without limitation, the transition of those contracts to other entities including without limitation the Non-Debtors, CFG Health, and NaphCare.

20.     To the extent not captured above, all Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders with any entities that currently hold contracts once held by the Debtors, including, without limitation, CFG Health, NaphCare, Wellpath, 3C, or Armor.

21.     Annual audited financial statements of CHS Group.

22.     Monthly financial statements of CHS Group.

23.     All federal and state tax returns of CHS Group.

24.     All Board Materials, including minutes, resolutions (and all related schedules), reports, analyses, and presentations related to the Leased Employees.

# **EXHIBIT C**

**From:** Isaac Lefkowitz <il@correct.health>
**Sent:** Wednesday, 24 June 2026 22:06:09
**To:** Salazar, Luis <LSalazar@coleschotz.com>
**Subject:** Discovery from CHS Employee Group LLC

Ex  External email  E

Dear Mr. Lazar,

As per your document request in a subpoena to CHS Employee Group LLC please find attached inline highlighted responses.
Please note most of your documents requested in the subpoena is stored on the debtor's servers with no available access to CHS Employee Group.

CHS Employee Group will make a corporate representative available for a video deposition, please reply with a scheduled video link.

Sincerely,

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CHS FL, LLC, *et al.*[1] | Case No. 2:26-bk-01087-FMR<br>*Jointly Administered* |
| Debtors. | |

/

**THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE'S
AMENDED[2] EMERGENCY MOTION TO COMPEL DISCOVERY
FROM CHS EMPLOYEE GROUP LLC
(Related to Doc. Nos. 10, 81, 179, 188, & 216)
EMERGENCY HEARING REQUESTED**

The Statutory Unsecured Claimholders' Committee (the "Committee") of CHS FL, LLC

and its affiliated debtors and debtors-in-possession (the "Debtors") hereby moves, by and through

its undersigned proposed counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure (the

"Federal Rules"), made applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Bankruptcy Rule 9006(c), and Rule 7026 of the Local Rules of the

United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), for entry

of an Order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"),

compelling CHS Employee Group LLC ("CHSEG") to comply with the *Subpoena to Testify at a*

*Deposition in a Bankruptcy Case (or Adversary Proceeding)* issued by the Committee to CHSEG

---

[1] The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112. The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

[2] Amended solely to provide proof of service of this Motion on CHS Employee Group LLC and additional information concerning the Committee's efforts to contact CHSEG to ensure compliance with the Subpoena without this Court's intervention.

on June 8, 2026 (the "<u>Subpoena</u>").  *See* Docket No. 188.  In support of this motion (this "<u>Motion</u>"), the Committee respectfully states as follows:

<u>**LOCAL RULE 7026-1(d) CERTIFICATION**</u>

The undersigned counsel certifies, pursuant to Local Rule 7026-1(d), that the following good faith efforts were made to confer with CHSEG prior to filing this Motion:

*Service of Subpoena*. The undersigned properly served the Subpoena on CHSEG's registered agent on June 9, 2026. To date, CHSEG has failed to respond to the Subpoena in any manner.

*Search for Contact Information*. The undersigned conducted a thorough and comprehensive search for CHSEG's contact information, including, without limitation, any email address, telephone number, or website maintained by CHSEG. Despite these efforts, the undersigned was unable to locate any such information, as CHSEG does not appear to publicly provide contact information.

*Attempts to Identify and Contact Counsel*. The undersigned has been unable to contact counsel for CHSEG, as the Committee is unaware of what counsel, if any, CHSEG may have retained. No counsel has appeared in these cases on CHSEG's behalf, and no party has informed the Committee that CHSEG has obtained counsel.

*Requests to Debtors for Assistance*. Given the common ownership between the Debtors and CHSEG and their status as contract counterparties, the undersigned contacted the Debtors to request that they either accept service on behalf of CHSEG or assist in arranging service on CHSEG. The Debtors refused both requests and have not provided any assistance in ensuring CHSEG's compliance with the Subpoena.

2

***Service of this Motion***. Prior to filing this Motion, undersigned counsel served CHSEG by both U.S. Mail and overnight mail with next day service at (i) its registered agent office and (ii) its principal place of business.

Accordingly, the undersigned believes he has complied with the Federal Rules, the Bankruptcy Rules, and the Local Rules under the circumstances.

## **PRELIMINARY STATEMENT[3]**

1. With the Evidentiary Hearing set for July 1, 2026, an Objection Deadline of June 22, 2026, and a Discovery Deadline of June 24, 2026, time is of the essence. The Committee now has less than one week to conduct depositions and obtain, review, and analyze documents critical to its fiduciary obligations to unsecured creditors. Given the severe time constraints imposed, the Committee issued the Subpoena on June 8, 2026, seeking to depose a designated representative of CHSEG, as well as production of a limited, targeted set of documents directly relevant to the Cash Collateral and Wages Motions, which should be readily accessible to CHSEG.

2. Despite being properly served with the Subpoena on the very next day, June 9, 2026, CHSEG has utterly failed to respond to the Subpoena or contact counsel for the Committee. Given the impending deadlines and the material impact the relief sought in the Cash Collateral and Wages Motions will have on unsecured creditors, including the Debtors' stipulation to the validity of liens on millions of dollars of purportedly secured debt and the transfer of millions of dollars out of the estates to pay the wages of individuals who are not even employees of the Debtors, the Committee requires compliance with Subpoena as soon as possible. Unless the Committee is afforded the opportunity to depose a designated representative of CHSEG and review documents in the possession and control of CHSEG, the Committee will simply not be able to carry out its

---

[3] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them in this Motion.

statutory obligations owed to unsecured creditors and the value of the Debtors' estates may be seriously diminished as a result. Accordingly, the Court should grant this Motion and compel CHSEG to comply with Subpoena by no later than June 23, 2026.

## BACKGROUND

3. On May 8, 2026 and May 13, 2026, as applicable, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On May 8, 2026, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* [Docket No. 10] (the "Wages Motion"). The Wages Motion provides, among other things, that "the Debtors do not directly employ any employees, rather the Debtors lease their employees from a non-Debtor affiliate, CHS Employee Group LLC." Wages Motion ¶ 8.

5. On May 19, 2026, the Debtors filed the *Debtors' Expedited Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 81] (the "Cash Collateral Motion").

6. On May 28, 2026, the Court entered the *Interim Order (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and*

4

*(II) Granting Related Relief* [Docket No. 134] (the "Interim Wages Order") granting certain relief requested in the Wages Motion on an interim basis.

7.      On May, 28, 2026, the United States Trustee for Region 21 appointed the Committee. *See* Docket No. 137.

8.      On June 2, 2026, the Court entered the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection* [Docket No. 150] (the "Interim Cash Collateral Order"), granting certain relief requested in the Cash Collateral Motion on an interim basis.

9.      On June 3, 2026, the Court held a hearing on, among other things, the Wages Motion and the Cash Collateral Motion.

10.     On June 8, 2026, the Court entered the *Scheduling Order Continuing Hearings and Setting Related Deadlines* [Docket No. 179] (the "Scheduling Order"), scheduling an evidentiary hearing on July 1, 2026, on the Cash Collateral Motion and Wages Motion (the "Evidentiary Hearing").  Further, the Scheduling Order establishes June 22, 2026, as the date by which parties must file objections to the relief sought, on a final basis, in the Cash Collateral Motion and Wages Motion (the "Objection Deadline").

11.     Also on June 8, 2026, the Committee issued the Subpoena to CHSEG requesting to depose a designated representative of CHSEG on the topics identified in Schedule A to the Subpoena and production of the documents identified on Schedule B to the Subpoena.  Given the expedited timelines set by the Scheduling Order, the Committee requested compliance with the Subpoena by no later than June 15, 2026 at 10:00 a.m. (ET) (the "Subpoena Response Deadline").  Following the issuance of the Subpoena, the Committee requested that the Debtors accept service on behalf of

CHSEG, or assist in arranging service on CHSEG, given their common ownership with CHSEG and status as contract counterparties with CHSEG. *See* **Exhibit B**.

12. On June 9, 2026, the Subpoena was properly served on CHSEG's registered agent. *See* **Exhibit C**.

13. On June 11, 2026, the Debtors informed the Committee that they would not accept service on behalf of CHSEG and have not provided the Committee with any assistance in ensuring CHSEG's compliance with the Subpoena. *See* **Exhibit D**.

14. On June 12, 2026, the Court entered the *Order Scheduling Trial* [Docket No. 216] (the "Trial Scheduling Order"), setting, among other deadlines, June 24, 2026 as the deadline for parties to conduct discovery related to the Evidentiary Hearing (the "Discovery Deadline").

15. The Committee did not receive a response from CHSEG prior to the Subpoena Response Deadline and, as of the date hereof, the Committee has not received any contact from a representative, agent, or employee of CHSEG, whatsoever.

## RELIEF REQUESTED

16. By this Motion, the Committee requests that the Court enter the Proposed Order compelling CHSEG to comply with the Subpoena by having a designated representative sit for a deposition and by having CHSEG produce documents responsive to the requests in the Subpoena, by no later than June 23, 2026.

## BASIS FOR RELIEF REQUESTED

17. Under Federal Rule 37(a)(3)(B), a party may move to compel a discovery response where "a corporation or other entity fails to make a designation under Rule 30(b)(6)" and where a "party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(ii), (iv). This Court "retains broad discretion when deciding to compel or deny discovery." *Rossi v. Billmyre*, No. 215CV180FTM29MRM, 2017 WL 10186581, at *1 (M.D. Fla. Nov. 14, 2017). Critically, "[t]he

6

court may enter an order compelling discovery when a party fails to respond or make objections to discovery requests." *U.S. v. Arnao*, No: 8:16-cv-2553-T-30JSS, 2017 WL 1251582, at *1 (M.D. Fla. Apr. 5, 2017).

18. This Court should exercise its broad discretion to compel CHSEG to comply with the Subpoena by (i) making available to the Committee a corporate designee for a deposition and (ii) producing all documents within their possession or control responsive to the document requests affixed to the Subpoena. If CHSEG is not compelled to comply with the Subpoena, the Committee will be greatly prejudiced as it will not be able to review the full breadth of evidence in connection with the matters set for trial prior to the Evidentiary Hearing. If the Committee is not able to conduct discovery on CHSEG, the Committee will not be able to fully and fairly investigate and/or contest the relief sought in connection with, among other things, the Cash Collateral and Wages Motions, which seek relief that could materially impact the value of the estates. It is the Committee's statutory mandate to investigate such matters on behalf unsecured creditors; however, it cannot properly fulfill its duties where parties like CHSEG flout discovery requests and this Court's authority. The upcoming Objection and Discovery Deadlines make these considerations especially critical.

19. Additionally, CHSEG's utter failure to even respond to the Subpoena provides further grounds for granting this Motion. Courts routinely compel discovery where parties openly disregard discovery requests and fail to timely object to the requests contained therein. *See, e.g., Pollock v. Move4all, Inc.*, No. 6:19-CV-130-GAP-DCI, 2021 WL 8201485, at *1 (M.D. Fla. May 10, 2021) (granting motion to compel where party failed to timely respond to discovery request); *Villegas v. BP Expl. & Prod. Inc.,* No. 18-14491-CIV, 2019 WL 13233585, at *2 (S.D. Fla. Apr. 24, 2019) (granting motion to compel where party failed to timely respond to discovery request

7

and stating that "failing to respond without explanation is unacceptable."). Accordingly, for the reasons set forth herein, the Court should grant the Motion and enter the Proposed Order compelling CHSEG to comply with the Subpoena by no later than June 23, 2026.

**WHEREFORE**, the Committee respectfully requests that this Court enter the Proposed Order: (i) granting this Motion; (ii) compelling CHSEG to comply with the Subpoena on or before June 23, 2026; and (iii) granting such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated:  June 19, 2026
       Miami, Florida

**COLE SCHOTZ P.C.**

*/s/ Luis Salazar*
Luis Salazar, Esq. (Florida Bar No. 147788)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
Sarah A. Carnes, Esq. (admitted *pro hac vice*)
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
lsalazar@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com

- and -

**PROSKAUER ROSE LLP**

Brian Rosen, Esq. (admitted *pro hac vice*)
Ehud Barak, Esq. (admitted *pro hac vice*)
Daniel Desatnik, Esq. (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

- and -

Paul Possinger, Esq. (admitted *pro hac vice*)
Jordan Sazant, Esq. (admitted *pro hac vice*)
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
ppossinger@proskauer.com
jsazant@proskauer.com

*Proposed Counsel to the Statutory Unsecured*
*Claimholders' Committee to CHS FL, LLC, et al.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this day, June 19, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in this case and parties in interest registered to receive notices via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that the foregoing document was served via first class mail, postage-prepaid and Federal Express, overnight delivery, on the following:

CHS Employee Group LLC
c/o CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

CHS Employee Group LLC
c/o Alan Rubenstein, Managing Member
205 Powell Place, Suite 104
Brentwood, TN 37027

*/s/     Luis Salazar*_____
          Luis Salazar

# EXHIBIT A

# Proposed Order

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

Chapter 11

CHS FL, LLC, *et al.*[1]

Case No. 2:26-bk-01087-FMR
*Jointly Administered*

Debtors.

_____ /

### ORDER GRANTING THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE'S AMENDED <u>EMERGENCY</u> MOTION TO COMPEL <u>DISCOVERY FROM CHS EMPLOYEE GROUP LLC</u>

Upon consideration of *The Statutory Unsecured Claimholders' Committee's Amended*

*Emergency Motion to Compel Discovery from CHS Employee Group LLC* (the "<u>Motion</u>")[2] pursuant

to Federal Rule 37, Bankruptcy Rules 7037 and 9006(c), and Local Rule 7026-1, seeking entry of

an Order compelling CHS Employee Group LLC to comply with the Subpoena; and all pleadings

---

[1] The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112. The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

[2] Capitalized terms used in this Order shall have the meanings ascribed to them in the Motion.

related thereto; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157; and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Committee having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances, and no further notice needing be provided; and the Court having reviewed the Motion and having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby

**ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      CHS Employee Group LLC shall make available to the Committee a corporate designee to sit for a deposition concerning the topics identified in Schedule A to the Subpoena at 10:00 a.m. (ET) on June 23, 2026.

3.      CHS Employee Group LLC shall produce all documents in its possession or control that are responsive to the requests identified in Schedule B of the Subpoena by no later than 9:00 a.m. (ET) on June 23, 2026.

4.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

###

Attorney Luis Salazar is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

2

# EXHIBIT B

2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
305.374.4848   305.503.6976  fax
—
New Jersey
—
New York
—
Delaware
—
Maryland
—
Texas
—
Washington, DC



## COLE SCHOTZ P.C.

Luis Salazar
Member
Admitted in FL, NJ, and NY

Reply to Florida Office
Writer's Direct Line: 305.374.4802
Writer's E-Mail: LSalazar@coleschotz.com

June 8, 2026

**VIA EMAIL**
Jeremy R. Johnson, Esq.
Polsinelli PC
600 Third Avenue, 42nd Floor
New York, NY 10016
jeremy.johnson@polsinelli.com

Trinitee G. Green, Esq.
Polsinelli PC
4020 Maple Avenue, Suite 300
Dallas, TX 75219
tggreen@polsinelli.com

> **Re:** **In re: CHS FL, LLC,** *et al.***, No. 2:26-bk-01087-FMR (Bankr. M.D. Fla.) Committee's Subpoena to Testify at a Deposition in a Bankruptcy Case to CHS Employee Group LLC**

Dear Counsel:

As you know, this firm represents the Statutory Unsecured Claimholders' Committee (the "Committee") in the above-referenced matter. Enclosed is the Committee's Subpoena to Testify at a Deposition in a Bankruptcy Case (the "Subpoena") to CHS Employee Group LLC ("CHS Group"). These requests are made in furtherance of the Committee's fiduciary duties to general unsecured creditors and in connection with the relief requested in the matters scheduled for hearing on July 1, 2026 at 2:00 p.m. (ET).  The Committee is in the process of serving the Subpoena on CHS Group, however, given that CHS Group is an affiliate of the Debtors, the Committee requests that you confirm whether the Debtors will accept or arrange service on behalf of CHS Group.  The Committee reserves all rights to seek additional documents and information from CHS Group.

Given the impending June 22, 2026 objection deadline for the relief scheduled for hearing on July 1, 2026 at 2:00 p.m. (ET), **the Committee requires the production of all requested documents and information on a rolling basis, with final production to be made, and that the designated representative of CHS Group sit for a deposition by, no later than June 15, 2026**.

coleschotz.com

 COLE SCHOTZ P.C.

Jeremy R. Johnson, Esq.
Trinitee G. Green, Esq.
June 8, 2026
Page 2

       Please confirm by return correspondence whether the Debtors will accept service on behalf of CHS Group and if so, whether CHS Group agrees to this discovery schedule.  If you have any questions, we are available to meet and confer.

                    Very truly yours,

                    */s/ Luis Salazar*

                    Luis Salazar


LS:amls

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Middle_____ District of _____Florida_____

In re CHS FL, LLC, et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. ____26-01087-FMR____

Chapter ____11____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: CHS Employee Group LLC, (c/o C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FLORIDA 33324)
*(Name of person to whom the subpoena is directed)*

■ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE: | DATE AND TIME |
|---|---|
| Video Conference | June 15, 2026 at 10:00 a.m. |

The deposition will be recorded by this method:

Stenography.

■ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Schedule B

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ____06/08/26____

CLERK OF COURT

OR

_____    _____
Signature of Clerk or Deputy Clerk    /s/ Luis Salazar
                                      Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)* The Statutory Unsecured Claimholders' Committee , who issues or requests this subpoena, are:

Luis Salazar, Esq., Cole Schotz P.C., 2121 SW 3rd Avenue, #200, Miami, FL 33129, lsalazar@coleschotz.com, 305-374-4848

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*:

on *(date)*                    .

☒ I served the subpoena by delivering a copy to the named person as follows:

on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $                          _____ .

 My fees are $                 for travel and $                 for services, for a total of $                 .

        I declare under penalty of perjury that this information is true and correct.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                    Chapter 11

CHS FL, LLC, *et al.*[1]                                  Case No. 2:26-bk-01087-FMR
                                                          *Jointly Administered*

      Debtors.

_____ /

**THE STATUTORY UNSECURED CLAIMHOLDERS'
COMMITTEE'S NOTICE OF TAKING DEPOSITION
*DUCES TECUM* OF CHS EMPLOYEE GROUP LLC**

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, as made applicable by Rule 7030 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Bankruptcy Rule 9014, and Rule 7030-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), the Statutory Unsecured Claimholders' Committee (the "Committee") of CHS FL, LLC, *et al.* (the "Debtors") will examine, under oath, the following individual and/or entity (the "Deponent"), at the following date, time, and location as specified below.

| **Person** | **Location** | **Date & Time** |
|---|---|---|
| The designated Corporate Representative of CHS Employee Group LLC (the "Designated Representative"), with the most knowledge concerning the topics and matters set forth in the attached **Schedule A**. | Video Conference via Zoom Video Communications, Inc. | June 15, 2026, at 10:00 a.m. (ET), or at another time mutually agreed upon by the parties |

---

[1] The address of the Lead Debtor is 3347 Tamiami Trl E. Naples, FL 34112. The last four digits of the Debtors' federal tax identification numbers are: (i) CHS FL, LLC (5547); (ii) CHS TX, Inc. (5886); (iii) CHS AL, LLC (0801); (iv) YesCare Corp. (5961); (v) CHS Care NY, LLC (4573); (vi) Corizon Health of New Mexico, LLC (4760); and (vii) CHS Care TX, LLC (6583).

The deposition will take place via video conference, which will require all participants to have access to an internet connection and a computer with a webcam. The Deponent will be provided with access information prior to the commencement of the deposition. The deposition will be recorded by video and stenographic means by a certified court reporter, Notary Public for the State of Florida at large, or some other person or officer authorized to record the testimony. The deposition will continue until completed or adjourned.

The deposition will be taken for purposes of discovery, preservation of testimony, for use at trial, and any other purposes permitted by the Federal Rules of Civil Procedure, the Bankruptcy Rules, the Federal Rules of Evidence, the Local Rules, or other applicable law. Any objection must be heard prior to the taking of the deposition. The Committee reserves the right to seek relief in the event the Designated Representative is not properly prepared to testify on the topics and matters set forth in the attached **Schedule A**, or the Deponent fails to produce the documents set forth on **Schedule B**.

The Committee reserves its right to issue other or further notices of deposition or serve additional discovery on the Deponent.

Dated: June 8, 2026      **COLE SCHOTZ P.C.**
Miami, Florida

*/s/ Luis Salazar*

Luis Salazar, Esq. (Florida Bar No. 147788)
Justin R. Alberto, Esq. (*pro hac vice* pending)
Sarah A. Carnes, Esq. (*pro hac vice* pending)
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
lsalazar@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com

*-and-*

**PROSKAUER ROSE LLP**

Brian Rosen, Esq. (*pro hac vice* pending)
Ehud Barak, Esq. (*pro hac vice* pending)
Daniel Desatnik, Esq. (*pro hac vice* pending)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

*-and-*

Paul Possinger, Esq. (*pro hac vice* pending)
Jordan Sazant, Esq. (*pro hac vice* pending)
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
ppossinger@proskauer.com
jsazant@proskauer.com

*Proposed Counsel to the Statutory Unsecured
Claimholders' Committee to CHS FL, LLC, et al.*

3

**SCHEDULE A**

In accordance with Federal Rule of Civil Procedure 30(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7030 and 9014(c), the Committee designates the matters identified below for examination.  In construing these topics, the following shall apply:

## I.    DEFINITIONS.

1.    The term "Communication" means any transmission of information by oral, graphic, written, pictorial or other perceptible means, including but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile, transmissions, electronic mail, meetings and personal conversations.

2.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

3.    The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations; provided, however, this term expressly excludes electronic mail, text messages, and other similar transmissions.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

4.    When referring to a natural person, "to identify" means to give, to the extent known, the person's full name, present or last known address and telephone number, and the person's present or last known place of employment.

5.    When referring to an entity other than a natural person, to "identify" means to give, to the extent known, the entity's full name, last known address and telephone number, date it was

organized, jurisdiction under which it was organized or incorporated, or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization.

6.     When referring to documents, to "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

7.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.     The use of the singular form of any word includes the plural and vice versa.

11.     "3C" shall mean West Kentucky Correctional Healthcare, LLC, d/b/a Comprehensive Correctional Care and any of its Affiliates or related entities.

12.     The term "Affiliate" or "Affiliates" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

13.     "Armor" shall mean Armor Correctional Health Services, Inc. and any of its Affiliates or related entities.

14.     "Board Materials" shall mean and refer to Documents (including drafts) created by or for, or provided to or considered by, the Board or any other similar governance body.

15.     "Budget" shall have the meaning ascribed to it in the Stipulation.

16. "Chapter 11 Cases" shall mean and refer to the jointly administered chapter 11 cases pending before the United States Bankruptcy Court, Middle District of Florida, Fort Myers Division, captioned *In re CHS FL, LLC, et al.*, No. 2:26-bk-01087-FMR.

17. "CFG Health" means CFG Health Systems, L.L.C. and any and all of its Affiliates and related entities.

18. "CHS Group" shall mean CHS Employee Group LLC.

19. "Contractors" shall mean the 17 independent contractors and 1 subcontractor referenced in the Wages Motion at paragraph 22.

20. "Debtors" shall mean and refer to (i) CHS FL, LLC; (ii) CHS TX, Inc.; (iii) CHS AL, LLC; (iv) YesCare Corp.; (v) CHS Care NY, LLC; (vi) Corizon Health of New Mexico, LLC; and (vii) CHS Care TX, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

21. "Employees" shall have the meaning ascribed to it in the Wages Motion.

22. The term "Insider" or "Insiders" shall have the meaning ascribed to the term "Insider" under 11 U.S.C. § 101(31), and includes, without limitation, Yitzchok Lefkowitz a/k/a Isaac Lefkowitz, Joel Landau, David Gefner, Frank Jeffrey Sholey, Jeffrey Scott King, Sara Ann Tirschwell, Ayodeji Olawale Ladele a/k/a Gregory Ladele, Beverly Michelle Rice, James T. Sprouse, Jr., Alan Rubenstein, Michael Hagney, Zalman Schapiro, David Harrington, Brandon E. De Julius, Mary Silva, Latasha McMillan, and Elmeada Frias.

23. "Leased Employees" shall mean, collectively, all Employees, Temporary Workers, and Contractors.

24. "Lefkowitz" shall mean Yitzchok Lefkowitz a/k/a Isaac Lefkowitz.

25. "Legacy Corizon Entities" shall mean M2 HoldCo, LLC; M2 LoanCo, LLC; M2 EquityCo, LLC; Valitas Intermediate Holdings, Inc.; M2 PharmaCorr Equity Holdings, LLC;

Valitas Health Services, Inc.; Corizon Health, Inc.; Corizon, LLC; Corizon Health of New Jersey, LLC; Pharmacorr/M2, LLC; Pharmacorr Holdings, LLC; Pharmacorr, LLC; and Endeavor Distribution, LLC.

26. "NaphCare" shall mean NaphCare Operating LLC, NaphCare Alabama Prisons LLC, and any of their Affiliates or related entities.

27. "Non-Debtors" shall mean any Affiliates, parents, successors, owners, assigns, and predecessors of the Debtors, including, without limitation, the Legacy Corizon Entities and Other Affiliate Entities.

28. "Other Affiliate Entities" shall mean Correct Health Services, LLC; TN Correct Health Services LLC; Geneva Consulting LLC; Geneva Consultings LLC; CHS Employee Group LLC; United Staffing; CHS Staffing, LLC; CHS PA, LLC; CHS MA, LLC; Corizon, LLC; YesCare Holdings LLC; CHS GA, LLC; CHS AZ, LLC; CHS IN, LLC; CHS MO, LLC; CHS KS, LLC; CHS NH, LLC; CHS New Jersey; CHS TN, LLC; YesCare AR, LLC; CHS IL, LLC; CHS MN, LLC; CHS VA, LLC; M2 LoanCo; M2 HoldCo, LLC; M2 EquityCo, LLC; SIGMA Risk Management, LLC; CFG Health Systems, LLC; CFG Medical Services PA, PLLC; Geneva Health P.A.; Pinta Capital; Perigrove LLC; Perigrove 1018, LLC; Adar Management, LLC; and any Affiliates, parents, successors, owners, assigns, and predecessors of any of the Debtor or Non-Debtor entities identified herein, including any entities Lefkowitz or any other Insider is a director or officer of, or directly or indirectly owns and/or controls.

29. "Petition Date" shall mean May 8, 2026 with respect to CHS FL, LLC, YesCare Corp., CHS TX, Inc., and CHS AL, LLC and May 13, 2026 with respect to CHS Care NY, LLC; Corizon Health of New Mexico, LLC; and CHS Care TX, LLC.

30. "Staffing Agencies" shall have the meaning ascribed to it in the Wages Motion.

31.     "Stipulation" shall mean the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection* filed at docket no. 81-1 in the Chapter 11 Cases.

32.     "TN Services" shall mean TN Correct Health Services, LLC.

33.     "Temporary Workers" shall have the meaning ascribed to it in the Wages Motion.

34.     "Wages Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* filed at docket no. 10 in the Chapter 11 Cases.

## II.     INSTRUCTIONS.

1.     Pursuant to Federal Rule 30(b)(6), made applicable in these proceedings by Bankruptcy Rule 7030, You are directed to  testify on Your behalf about information known or reasonably available to You regarding the below topics.

2.     You shall set forth, for each person designated, the matters on which the person will testify.

3.     The person(s) so designated shall testify as to information known or reasonably available to You regarding the below topics.

## III.     AREAS OF INQUIRY.

The Deponent shall be prepared to address the following areas of inquiry:

1.     All facts and Documents concerning agreements by and between the Debtors and CHS Group, including, without limitation, any employee leasing agreements, staffing agreements, management services agreements, or similar contracts or arrangements.

2.      All facts and Documents concerning agreements by and between CHS Group and any Non-Debtors, CFG Health, or any other party, related to the Leased Employees.

3.      All facts and Documents concerning the aggregate prepetition amounts owed by the Debtors to CHS Group as of the Petition Date.

4.      All facts and Documents concerning all direct and indirect equity holders of CHS Group.

5.      All facts and Documents concerning the current and historical corporate organizational structure of CHS Group and its Affiliates, including without limitation, the Debtors, TN Services, and any Staffing Agencies.

6.      All facts, Documents, and Communications concerning any organizational changes or proposed organizational changes.

7.      All facts and Documents concerning all current and former individual directors, officers, and executives of CHS Group and its Affiliates, including without limitation, their affiliation to any of the Non-Debtors, whether historically or currently, including such persons' (i) title at CHS Group (or its Affiliates), (ii) tenure at CHS Group (or its Affiliates), (iii) name of the corresponding Non-Debtor(s), and (iv) role at the corresponding Non-Debtors.

8.      All facts and Documents concerning (i) the current assets and liabilities of CHS Group and (ii) the aggregate amount of cash held in any bank accounts maintained by CHS Group.

9.      All facts and Documents concerning the flow of funds from the Debtors, Non-Debtors, CFG Health, or any other entity to CHS Group and then to the Leased Employees, including any invoices, payment schedules, or funding agreements.

10.     All facts and Documents concerning bank accounts owned or controlled by CHS Group.

11. All facts and Documents concerning transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees.

12. All facts and Documents concerning each Leased Employee's (i) name; (ii) title; (iii) role; (iv) assigned facility; (v) agreements related to providing services to the Debtors; and (vi) amount owed for providing services to the Debtor prior to the Petition Date.

13. All facts and Documents concerning any Leased Employees' status as an Insider of the Debtors.

14. All facts and Documents concerning the direction and supervision of the Leased Employees' day-to-day activities.

15. All facts and Documents concerning the services provided by the Leased Employees to the Debtors prior to the Petition Date and/or following the Petition Date.

16. All facts and Documents concerning the services provided by the Leased Employees to any Non-Debtors, Insiders of the Debtors, or CFG Health prior to the Petition Date and/or following the Petition Date.

17. All facts and Documents concerning the amount and recipients of payments proposed to be made by CHS Group to any Leased Employees for services rendered following the Petition Date, including, without limitation, those to paid pursuant to the Budget, or any other budget filed in connection with a debtor-in-possession financing motion or motion to use cash collateral filed in the Chapter 11 Cases.

18. All facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to any agreements with the Debtors, Non-Debtors, CFG Health, and/or NaphCare pertaining to the Leased Employees, including without limitation any negotiation of contract terms.

19.     All facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to contracts previously or currently held by Debtor entities including, without limitation, the transition of those contracts to other entities including without limitation the Non-Debtors, CFG Health, and NaphCare.

20.     To the extent not captured above, all facts and Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders with any entities that currently hold contracts once held by the Debtors, including, without limitation, CFG Health, NaphCare, Wellpath, 3C, or Armor.

21.     All facts and Documents concerning audited or unaudited annual financial statements, or monthly financial statements of CHS Group.

22.     All facts and Documents concerning federal and state tax returns of CHS Group.

23.     All facts and Documents concerning Board Materials, including minutes, resolutions (and all related schedules), reports, analyses, and presentations related to the Leased Employees.

## SCHEDULE B

Pursuant to Rules 9014 and 9016 of the Federal Rules of Bankruptcy Procedure, Rule 45 of the Federal Rules of Civil Procedure, and Rule 9016-1 of the Local Bankruptcy Rules of the Middle District of Florida, the Statutory Unsecured Claimholders' Committee of CHS FL, *et al.*, by and through its undersigned proposed counsel, requests that CHS Employee Group LLC produce legible copies of the documents and information requested herein to Cole Schotz P.C., 2121 SW 3rd Avenue, Suite 200 Miami, FL 33129, Attn.: Luis Salazar, Esq., lsalazar@coleschotz.com.

## DEFINITIONS[2]

1.    The term "Communication" means any transmission of information by oral, graphic, written, pictorial or other perceptible means, including but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile, transmissions, electronic mail, meetings and personal conversations.

2.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

3.    The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations; provided, however, this term expressly excludes electronic mail, text messages, and other similar transmissions. This includes documents stored in any medium from which information can be

---

[2]    Capitalized terms used but not defined in these definitions shall have the meanings ascribed to them later in these definitions.

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

4.      When referring to a natural person, "to identify" means to give, to the extent known, the person's full name, present or last known address and telephone number, and the person's present or last known place of employment.

5.      When referring to an entity other than a natural person, to "identify" means to give, to the extent known, the entity's full name, last known address and telephone number, date it was organized, jurisdiction under which it was organized or incorporated, or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization.

6.      When referring to documents, to "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

7.      The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.     The use of the singular form of any word includes the plural and vice versa.

11.     "3C" shall mean West Kentucky Correctional Healthcare, LLC, d/b/a Comprehensive Correctional Care and any of its Affiliates or related entities.

13

12. The term "Affiliate" or "Affiliates" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

13. "Armor" shall mean Armor Correctional Health Services, Inc. and any of its Affiliates or related entities.

14. "Board Materials" shall mean and refer to Documents (including drafts) created by or for, or provided to or considered by, the Board or any other similar governance body.

15. "Budget" shall have the meaning ascribed to it in the Stipulation.

16. "Chapter 11 Cases" shall mean and refer to the jointly administered chapter 11 cases pending before the United States Bankruptcy Court, Middle District of Florida, Fort Myers Division, captioned *In re CHS FL, LLC, et al.*, No. 2:26-bk-01087-FMR.

17. "CFG Health" means CFG Health Systems, L.L.C. and any and all of its Affiliates and related entities.

18. "CHS Group" shall mean CHS Employee Group LLC.

19. "Contractors" shall mean the 17 independent contractors and 1 subcontractor referenced in the Wages Motion at paragraph 22.

20. "Debtors" shall mean and refer to (i) CHS FL, LLC; (ii) CHS TX, Inc.; (iii) CHS AL, LLC; (iv) YesCare Corp.; (v) CHS Care NY, LLC; (vi) Corizon Health of New Mexico, LLC; and (vii) CHS Care TX, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

21. "Employees" shall have the meaning ascribed to it in the Wages Motion.

22. The term "Insider" or "Insiders" shall have the meaning ascribed to the term "Insider" under 11 U.S.C. § 101(31), and includes, without limitation, Yitzchok Lefkowitz a/k/a Isaac Lefkowitz, Joel Landau, David Gefner, Frank Jeffrey Sholey, Jeffrey Scott King, Sara Ann Tirschwell, Ayodeji Olawale Ladele a/k/a Gregory Ladele, Beverly Michelle Rice, James T.

14

Sprouse, Jr., Alan Rubenstein, Michael Hagney, Zalman Schapiro, David Harrington, Brandon E. De Julius, Mary Silva, Latasha McMillan, and Elmeada Frias.

23.     "Leased Employees" shall mean, collectively, all Employees, Temporary Workers, and Contractors.

24.     "Lefkowitz" shall mean Yitzchok Lefkowitz a/k/a Isaac Lefkowitz.

25.     "Legacy Corizon Entities" shall mean M2 HoldCo, LLC; M2 LoanCo, LLC; M2 EquityCo, LLC; Valitas Intermediate Holdings, Inc.; M2 PharmaCorr Equity Holdings, LLC; Valitas Health Services, Inc.; Corizon Health, Inc.; Corizon, LLC; Corizon Health of New Jersey, LLC; Pharmacorr/M2, LLC; Pharmacorr Holdings, LLC; Pharmacorr, LLC; and Endeavor Distribution, LLC.

26.     "NaphCare" shall mean NaphCare Operating LLC, NaphCare Alabama Prisons LLC, and any of their Affiliates or related entities.

27.     "Non-Debtors" shall mean any Affiliates, parents, successors, owners, assigns, and predecessors of the Debtors, including, without limitation, the Legacy Corizon Entities and Other Affiliate Entities.

28.     "Other Affiliate Entities" shall mean Correct Health Services, LLC; TN Correct Health Services LLC; Geneva Consulting LLC; Geneva Consultings LLC; CHS Employee Group LLC; United Staffing; CHS Staffing, LLC; CHS PA, LLC; CHS MA, LLC; Corizon, LLC; YesCare Holdings LLC; CHS GA, LLC; CHS AZ, LLC; CHS IN, LLC; CHS MO, LLC; CHS KS, LLC; CHS NH, LLC; CHS New Jersey; CHS TN, LLC; YesCare AR, LLC; CHS IL, LLC; CHS MN, LLC; CHS VA, LLC; M2 LoanCo; M2 HoldCo, LLC; M2 EquityCo, LLC; SIGMA Risk Management, LLC; CFG Health Systems, LLC; CFG Medical Services PA, PLLC; Geneva Health P.A.; Pinta Capital; Perigrove LLC; Perigrove 1018, LLC; Adar Management, LLC; and

15

any Affiliates, parents, successors, owners, assigns, and predecessors of any of the Debtor or Non-Debtor entities identified herein, including any entities Lefkowitz or any other Insider is a director or officer of, or directly or indirectly owns and/or controls.

29.     "Petition Date" shall mean May 8, 2026 with respect to CHS FL, LLC, YesCare Corp., CHS TX, Inc., and CHS AL, LLC and May 13, 2026 with respect to CHS Care NY, LLC; Corizon Health of New Mexico, LLC; and CHS Care TX, LLC.

30.     "Staffing Agencies" shall have the meaning ascribed to it in the Wages Motion.

31.     "Stipulation" shall mean the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection* filed at docket no. 81-1 in the Chapter 11 Cases.

32.     "TN Services" shall mean TN Correct Health Services, LLC.

33.     "Temporary Workers" shall have the meaning ascribed to it in the Wages Motion.

34.     "Wages Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Reimbursable Employee Expenses, and (C) Obligations Relating to Medical and Other Benefits Programs, and (II) Granting Related Relief* filed at docket no. 10 in the Chapter 11 Cases.

**INSTRUCTIONS**

You are requested to produce all communications, documents and information requested herein that are within your possession, custody, or control or in the possession, custody, or control of your officers, directors, agents, employees, representatives, affiliated or associated companies, or any other person or entity acting or purporting to act on your behalf.

1.      Electronically stored information is to be produced in native format unless otherwise agreed between counsel or unless such information could not be retrieved or accessed with the use of commonly used commercial off-the-shelf software, in which event counsel is requested to contact the undersigned to discuss the form of production.  In addition, it is requested that all electronically stored information be produced as .TIFF images with Relativity/Concordance load files (.DAT and .OPT) and searchable text (*i.e.*, OCR).

2.      If the response to any production request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

3.      Pursuant to Fed. R. Civ. P. 26(b)(5)(A), if you assert a claim of privilege in responding or objecting to any production request, you must identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  If you withhold otherwise discoverable documents by claiming that the documents are privileged, you must describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

17

4.      If your response to any production request is any other objection, you must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

5.      If any document or communication responsive to these production requests has been destroyed, state when the document or communication was destroyed, identify the person who destroyed the document or communication, and the person who directed that it be destroyed. Additionally, detail the reasons for the destruction, describe the nature of the document or communication, identify the persons who created, sent, received, or reviewed the document or communication, and state in as much detail as possible the contents of the document.

6.      Documents and communications should be segregated according to the number of the request to which you are responding or produced in the manner they are kept in the ordinary course of business.

7.      To the extent there is no time period set forth in a specific request, there shall be no time limitation for such request.

8.      Pursuant to Fed. R. Civ. P. 26(e)(1), you must supplement or correct your responses to these requests in a timely manner if you learn that in some material respect the disclosure or response is incomplete or incorrect.

## **REQUESTS FOR PRODUCTION**

1.      All agreements by and between the Debtors and CHS Group, including, without limitation, any employee leasing agreements, staffing agreements, management services agreements, or similar contracts or arrangements. MSA

2.      All agreements by and between CHS Group and any Non-Debtors, CFG Health, or any other party, related to the Leased Employees. N/A

18

3. Documents sufficient to identify the aggregate prepetition amounts owed by the Debtors to CHS Group as of the Petition Date. Debtor has it

4. Documents sufficient to identify all direct and indirect equity holders of CHS Group. N/A

5. Documents sufficient to identify the current and historical corporate organizational structure of CHS Group and its Affiliates, including without limitation, the Debtors, TN Services, and any Staffing Agencies. N/A

6. All Documents, Communications, and supporting analyses concerning any organizational changes or proposed organizational changes. N/A

7. A schedule identifying all officers, directors, executives, or other stakeholders of CHS Group with any affiliation to any of the Non-Debtors, whether historically or currently, including such persons' (i) title at CHS Group (or its Affiliates), (ii) tenure at CHS Group (or its Affiliates), (iii) name of the corresponding Non-Debtor(s), and (iv) role at the corresponding Non-Debtors. N/A

8. Documents sufficient to identify (i) the current assets and liabilities of CHS Group and (ii) the aggregate amount of cash held in any bank accounts maintained by CHS Group. N/A

9. Documents sufficient to identify how funds flow from the Debtors, Non-Debtors, CFG Health, or any other entity to CHS Group and then to the Leased Employees, including any invoices, payment schedules, or funding agreements. Debtor has it

10. Documents sufficient to identify all bank accounts owned or controlled by CHS Group. Debtor has it

11. Documents sufficient to identify all transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees. N/A

19

12. Documents sufficient to identify each Leased Employee's (i) name; (ii) title; (iii) role; (iv) assigned facility; (v) agreements related to providing services to the Debtors; and (vi) amount owed for providing services to the Debtor prior to the Petition Date. Debtor has it

13. Documents sufficient to identify which Leased Employees CHS Group believes qualify as Insiders of the Debtors. Debtor has it

14. Documents sufficient to identify who directs and supervises the Leased Employees' day-to-day activities. N/A

15. Documents sufficient to identify (i) which Leased Employees are providing services to the Debtors pursuant to active contracts following the Petition Date and (ii) which Leased Employees ceased providing services to the Debtors prior to the Petition Date. Debtor has it

16. Documents sufficient to identify (i) which Leased Employees provided services to any Non-Debtors, Insiders of the Debtors, or CFG Health prior to the Petition Date and (ii) which Leased Employees are providing services to any Non-Debtors, Insiders of the Debtors, or CFG Health following the Petition Date. N/A

17. Documents sufficient to identify the amount and recipients of payments proposed to be made by CHS Group to any Leased Employees for services rendered following the Petition Date, including, without limitation, those to paid pursuant to the Budget, or any other budget filed in connection with a debtor-in-possession financing motion or motion to use cash collateral filed in the Chapter 11 Cases. Debtor has it

18. All Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to any agreements with the Debtors, Non-Debtors, CFG Health, and/or NaphCare pertaining to the Leased Employees, including without limitation any negotiation of contract terms. N/A

20

19. All Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders related to contracts previously or currently held by Debtor entities including, without limitation, the transition of those contracts to other entities including without limitation the Non-Debtors, CFG Health, and NaphCare. N/A

20. To the extent not captured above, all Communications between, among, or involving CHS Group officers, directors, executives, or other stakeholders with any entities that currently hold contracts once held by the Debtors, including, without limitation, CFG Health, NaphCare, Wellpath, 3C, or Armor. N/A

21. Annual audited financial statements of CHS Group. N/A

22. Monthly financial statements of CHS Group. N/A

23. All federal and state tax returns of CHS Group. N/A

24. All Board Materials, including minutes, resolutions (and all related schedules) ,N/A
reports, analyses, and presentations related to the Leased Employees.

# <u>EXHIBIT C</u>

# AFFIDAVIT OF SERVICE

## UNITED STATES BANKRUPTCY COURT
Middle District of Florida

Case Number: 26-01087-FMR

Debtor:
**IN RE: CHS FL, LLC, et al.**

For:
Luis Salazar
COLE SCHOTZ PC

Received by Chris Yeoman on the 9th day of June, 2026 at 10:05 am to be served on **CHS Employee Group LLC c/o REGISTERED AGENT, CT CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.**

I, Chris Yeoman, being duly sworn, depose and say that on the **9th day of June, 2026** at **1:20 pm, I:**

**Served Corporate** the within named Corporation / Limited Liability Company / Limited Liability Partnership / Limited Partnership by delivering a true copy of the **SUBPOENA TO TESTIFY AT A DEPOSITIONIN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING), THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE'S NOTICE OF TAKING DEPOSITION DUCES TECUM OF CHS EMPLOYEE GROUP LLC with SCHEDULE A and SCHEDULE B, and **WITNESS CHECK OF $40.00** with the date and hour of service endorsed thereon by me to MONICA CREARY, Designated Representative of the Registered Agent,** who stated they have been designated by the Registered Agent to accept service for the within named Corporation / Limited Liability Company / Limited Liability Partnership / Limited Partnership. Served pursuant to Florida Statute 48.091(3)(4). Service was accepted at the office of the Registered Agent, **1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.**

**Description** of Person Served: Age: 30, Sex: F, Race/Skin Color: Black, Height: 5'7", Weight: 130, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server in good standing in the county or judicial circuit in which the process was affected in accordance with State Statutes. Under penalties of perjury, I declare that I have read the forgoing Affidavit/Verified Return of service and the facts stated in it are true and correct. Pursuant to F.S. 92.525(2).

Subscribed and Sworn to before me by means of [X] physical presence or [ ] online notarization this the ___9___ day of ___June___, _2026_ by the affiant who is personally known to me.

NOTARY PUBLIC

GABRIELLE MARIE THOMAS
Notary Public-State of Florida
Commission # HH 525447
My Commission Expires
May 09, 2028

Chris Yeoman
SPS #262

**ORANGE LEGAL, A VERITEXT COMPANY**
**800 North Magnolia Avenue**
**4TH FLOOR**
**Orlando, FL 32803**
**(800) 275-7991**

Our Job Serial Number: CIZ-2026012333
Ref: 8264385

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0d



# EXHIBIT D



7676 Forsyth Boulevard, Suite 800, St. Louis, MO 63105  ·  (314) 889-8000

June 11, 2026

James P. Martin
(314) 552-6802
jmartin@polsinelli.com

**VIA ELECTRONIC MAIL**

Luis Salazar
Cole Schotz P.C.
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
Telephone: (305) 374-4848
Email: lsalazar@coleschotz.com

> **Re:     Subpoena Duces Tecum Directed to CHS Employee Group LLC**
> **In re: CHS FL, LLC, *et al.*, No. 2:26-bk-01087-FMR (Bankr. M.D. Fla.)**

Mr. Salazar:

Our firm has received the subpoena duces tecum (the "**Subpoena**") directed to CHS Employee Group LLC. We write to advise that Polsinelli PC does not represent CHS Employee Group LLC in this matter and is not authorized to accept service or respond to the Subpoena on its behalf.

Accordingly, we are unable to respond to the Subpoena. Please direct any future correspondence or service the appropriate party.

Sincerely,

/s/ *James P. Martin*

James P. Martin

cc:     Justin R. Alberto, Esq., jalberto@coleschotz.com
Sarah A. Carnes, Esq., scarnes@coleschotz.com
Brian Rosen, Esq., brosen@proskauer.com
Ehud Barak, Esq., ebarak@proskauer.com
Daniel Desatnik, Esq., ddesatnik@proskauer.com
Paul Possinger, Esq., ppossinger@proskauer.com

Atlanta | Boston | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Kansas City | Los Angeles | Miami | Nashville | New York | Park City | Philadelphia | Phoenix | Raleigh
Salt Lake City | San Diego | San Francisco | Seattle | St. Louis | Washington, D.C. | Wilmington

polsinelli.com

111615531



June 11, 2026
Page 2


       Jordan Sazant, Esq., jsazant@proskauer.com
       Mike Del Lago, Esq., mike@dellagolaw.com
       Trinitee G. Green, Esq., tggreen@polsinelli.com
       Jeremy R. Johnson, Esq., jeremy.johnson@polsinelli.com

111615531

# **EXHIBIT E**

## RELATED ENTITY SERVICES AGREEMENT

This Agreement is made effective as of the 11th day of March 2025 ("Effective Date"), by and between **CHS EMPLOYEE GROUP, LLC** ("CHS"), whose principal office is located at 205 Powell Place Brentwood, TN 37027 and **YESCARE CORP.** ("YesCare"), whose principal office is located at 205 Powell Place, Suite 104, Brentwood, TN 37027.  (CHS and YesCare may be collectively referred to as the "Parties" or individually as "Party".)

**RECITALS**

WHEREAS, CHS and YesCare are related entities under common control;

WHEREAS, CHS has the necessary tools and expertise in providing certain human resource related services; and

WHEREAS, Yescare desires to accept and pay for such services under the terms and conditions as set forth below;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, CHS and YesCare agree as follows:

**I.  PURPOSE**.  CHS agrees to jointly employ all or a substantial number of the employees assigned to provide services for YesCare whereby the responsibilities for such Employees (as defined in Sections III and V below) are allocated between the Parties. YesCare understands that it maintains an employment relationship according to law with Employees throughout the Term of this Agreement. This Agreement defines the allocation of responsibilities between CHS and YesCare.

**II.  TERM**.  This Agreement shall commence on the Effective Date and remain in full force and effect for a period of one (1) year thereafter ("Initial Period"), unless terminated by either Party with thirty (30) days prior written notice. After the Initial Period, this Agreement shall automatically renew for one (1) year periods until terminated by either Party with thirty (30) days prior written notice. During the thirty (30) days from the date written cancellation is sent to the other Party, the Parties will continue to meet the obligations set forth in this Agreement, including without limitation, the obligation of YesCare to pay all CHS invoices. The period that this Agreement shall be in full force and effect is referred to as the "Term."

**III.  SERVICES PROVIDED BY AND OBLIGATIONS OF CHS**

A.  Employees covered by this Agreement only include those employees who have completed the Parties' employment process and have been accepted and approved, and paid by CHS ("Employees").

B.  The services to be provided by CHS for Employees include, but are not limited to:

1.      Pay wages to Employees, and prepare, administer, compile, and file all payroll information and distribute payroll checks to Employees from its own accounts; "Wages" does not include any obligation between YesCare and an Employee for payments beyond or in addition to the

Employee's salary, draw, or regular rate of pay, such as bonuses, commissions, severance pay, deferred compensation, profit sharing or vacation, sick or other paid time off pay, unless CHS has expressly agreed to assume liability for such payments in this Agreement;

2.      Based on complete, timely and accurate reporting of job duties and hours worked by YesCare, assume responsibility for the withholding and remittance of federal and state employment taxes, including but not limited to: (i) federal income tax withholding; (ii) state and local income tax; (iii) Federal Insurance Contributions Act ("FICA") withholding; (iv) Federal Unemployment Tax Act ("FUTA") withholding; and (v) state unemployment tax withholding;

3.      Administration of applicable benefit plans of CHS offered to similarly situated employees and existing on the Effective Date (the "CHS Benefit Plans"), subject to, and on a basis consistent with, the terms of such CHS Benefit Plans.   An Employee's available coverage and eligibility to participate in a given plan shall be governed by and subject to the terms and conditions of the plans offered by CHS. CHS and its applicable carrier reserve the right to change or substitute benefit plans or to implement cost increases. CHS shall provide at least twenty (20) days prior notice of any such change, substitution, or cost increase.  Nothing in this Agreement shall be deemed to be, nor shall constitute an amendment or modification of, any employee benefit plan maintained by CHS or confer upon any  Employee the right to participate in any particular employee benefit plan offered by CHS (except in accordance with its terms, as such terms may be modified from time to time as provided herein);

4.      Maintaining Employee personnel records including payroll records;

5.      Consistent with applicable law, maintenance of workers compensation insurance coverage during the Term for Employees, for which upon request CHS shall provide YesCare a certificate of coverage, and management of workers compensation claims;

6.      Provide unemployment compensation insurance in accordance with State law.

C. The Parties acknowledge that they are entering into a joint employment relationship concerning Employees.

**IV. YESCARE SERVICE FEES.**

A. **Fees.** YesCare shall pay to CHS amounts equal to the total compensation and other costs incurred or paid by CHS to or on behalf of the Employees for providing services under this Agreement, together with the other costs incurred by CHS in making the Employees available, as provided below (collectively, the "Fees").  The Fees shall be determined by adding together the following expenses attributable to the services of the Employees for each applicable payroll period (or partial payroll period) during the Term, whether such expenses are known and payable during the Term or only after the expiration of the Term:

1.      All gross Wages or other compensation (including bonuses, vacation pay, paid time off, sick pay and any other paid leave) paid by CHS to or on account of the Employees, including, for the avoidance of doubt, amounts actually paid and amounts withheld for any reason, including for federal, state and local taxes;

2.      All applicable federal, state and local taxes, including unemployment and employment taxes (*e.g.*, FICA) payable by CHS and attributable to the Employees (but not including amounts withheld from the Employees' Wages as provided in Section IV.A.1 above;

3.      All amounts paid or incurred by CHS to or on account of the Employees for workers' compensation insurance and any workers' compensation claims based on occurrences during the Term;

4.      The cost paid or suffered by CHS on behalf of Employees for coverage under any applicable CHS Benefit Plans, including CHS' health and retirement plans, during the Term.  For any CHS Benefit Plan that is self-insured, the amount to be reimbursed to CHS by YesCare shall be the amount which accrues and is payable by CHS as the aggregate employer contribution for the coverage of the Employees (and their spouses and dependents), plus any costs and expenses related to the administration of such plan that are allocable to the Employees; and

5.      To the extent not provided or excluded above, all other external costs and expenses or amounts paid to third parties, if any, incurred by CHS arising from the services provided by Employees under this Agreement, including but not limited to payroll processing fees and other administrative expenses.

**B.  Administrative Fee.**  In addition to the Fees and other amounts payable to CHS as described in IV.A above, YesCare shall pay CHS an administrative fee equal to 4% of all gross wages per section IV.A.1 above  ("Administrative Fee").

**C.  Procedures for Reimbursement of Fees.**  Within ten (10) business days after the end of each payroll period during the Term, CHS will provide a statement to YesCare showing the Fees owed by YesCare for such payroll period (the "CHS Statement") plus the Administrative Fee. YesCare shall pay CHS the amount in the CHS Statement within two (2) business days after receipt of the CHS Statement.  Following the expiration of the Term, CHS will provide a CHS Statement to YesCare of any outstanding Fees incurred prior to the expiration of the Term that were not previously paid by YesCare, and YesCare shall pay CHS such outstanding Fees plus any applicable Administrative Fee within two (2) business days after receipt of the CHS Statement.

D.  Administrative Fees for services rendered to YesCare in addition to unemployment tax rates and limits, workers' compensation rates and minimums, workers' compensation claims fees and cost of benefits to Employees may be adjusted and/or added by CHS no more than annually and upon at least ninety (90) days' prior written notice to YesCare.

**V.  OBLIGATIONS AND DUTIES OF YESCARE.**

A.  YesCare understands that the employees are, and will be treated as, common law employees of YesCare.  YesCare shall be responsible for the day-to-day supervision and control of Employees in the conduct of their work. YesCare will be responsible for verifying skills and qualifications for employment. If a professional license is necessary for the performance of YesCare's work by the Employee, YesCare shall verify the existence, maintenance and validity of such license.

B.  CHS, with the assistance of and in conjunction with YesCare, shall obtain fully completed I-9 Forms from each Employee covered by this Agreement upon the Effective Date and during the Term of this Agreement. YesCare agrees to retain the original of the Employee I-9 Forms and to deliver a copy to CHS upon completion by the Employee.

C.  YesCare shall maintain a record of actual time worked and verify the accuracy of wages and salaries reported to and paid by CHS during each pay period. Within forty-eight (48) hours prior to the YesCare's payday, YesCare shall provide to CHS via facsimile transmission, email or via CHS's internet connection, a report of the total hours worked by Employees.  YesCare warrants that the information reported to CHS is correct and accurate. YesCare further agrees to hold CHS harmless from any liability that may arise as a result of the improper reporting of such information by YesCare.

D.  YesCare shall provide CHS written statements of its policies regarding employee benefits. Such policies will comply with all federal, state and local governmental laws and regulations. YesCare will pay for any unpaid benefits due to Employees upon commencement or termination of this Agreement, including but not limited to unused vacation, severance pay, or continuing health and life insurance premiums until the end of the month during which this Agreement is terminated or until the end of the month in which the Employee separates employment.

E.  YesCare agrees to comply at its expense with all safety and health laws, regulations or rules, whether federal, state or local. YesCare will also ensure compliance with safe work practices and use of protective equipment and devices imposed by controlling federal, state or local law. CHS retains a right, but not the duty, to provide for the health, welfare and benefit of Employees through such programs as professional guidance, including, but not limited to, employment training, safety and compliance matters. YesCare agrees to cooperate with CHS's workers' compensation carrier in the inspection of work locations and the investigation of workplace accidents and injuries. Nothing in this Agreement shall relieve YesCare of any obligations imposed under safety-related law.

F.  YesCare maintains the right to request from CHS worksite loss experience data upon termination of this Agreement if YesCare has no invoice balance due CHS.

G.  YesCare shall require that all contractors and sub-contractors doing work for YesCare maintain workers' compensation. Furthermore, in states requiring same, YesCare agrees to maintain separate workers compensation insurance covering Employees.

H.  As joint employers, both CHS and YesCare are responsible for compliance with all local, state and federal law, including but not limited to OSHA regulations, Environmental Protection Agency regulations, child labor laws, the Worker Adjustment and Retraining Notification Act ("WARN"), Fair Labor Standards Act ("FLSA") including Equal Pay Act, Uniformed Services Employment and Reemployment Rights Act ("USERRA"), , the National Labor Relations Act ("NLRA") and the Fair Credit Reporting Act ("FCRA").

## VI.  WORKERS COMPENSATION AND SAFETY PRACTICES.

A.  YesCare's workplace must comply with all regulatory aspects of doing business, including without limitation, the obligations to, provide at its expense and ensure use of all personal

protective equipment, maintain a safe and accessible workplace under the Occupational Safety & Health Act ("OSHA"), and the ADA, and all related and similar state regulatory requirements.

B.  In relation to the provision of workers compensation benefits by CHS, YesCare shall:

1. Cooperate in the investigation of any workplace complaint or injury with its workers compensation insurer, and provide them the right to inspect and access, upon request, YesCare's premises, records, and Employees in order to investigate the alleged violation of any Handbook Policy, safety concern, injury or other workplace incident;

2.  If any Employee is injured,  report the accident or injury to its workers compensation insurer as required by the policy.

## VII.  INSURANCES.

A.  If any Employee is required to drive a vehicle of any kind for YesCare, YesCare will provide liability insurance which will insure against public liability for bodily injury, death and property damage with a minimum combined single limit of One Million Dollars ($1,000,000) and uninsured motorist insurance with a minimum combined single limit of One Million Dollars ($1,000,000), in states where no fault laws apply. Not later than five business days after its execution and delivery of this Agreement, YesCare shall cause its insurance carrier to issue a certificate of insurance to CHS verifying such coverage and providing for not less than 30 days' prior written notice to CHS of cancellation of or any changes to such coverage and identify CHS as an additional insured.

B.  YesCare agrees to keep in full force and effect at all times during the Term a comprehensive general liability insurance policy in the minimum limit of One Million Dollars ($1,000,000) insuring YesCare against bodily injury and property damage caused by YesCare's premises-operations or completed operations. Not later than five business days after its execution and delivery of this Agreement, YesCare shall cause its insurance carrier to issue a certificate of insurance to CHS verifying such coverage and providing for not less than 30 days' prior written notice to CHS of cancellation of or any changes to such coverage and identify CHS as an additional insured.

C.  YesCare agrees to keep in full force and effect at all times during the Term an employee practices liability insurance policy in the minimum limits of One Million Dollars ($1,000,000) which such policy shall name CHS as an additional insured.

D.     If any Employee performs any duties which requires the maintenance of a professional license and corresponding professional liability insurance, YesCare agrees to keep in full force and effect during the Term professional liability insurance which shall cover any acts, errors or omissions, including but not limited to the negligent acts of the professional employee with a minimum limit of One Million Dollars ($1,000,000). Not later than five business days after its execution and delivery of this Agreement, YesCare shall cause its insurance carrier to issue a certificate of insurance to CHS verifying such coverage and providing for not less than 30 days' prior written notice to CHS of cancellation of or any changes to such coverage and identify CHS as an additional insured.

E. With respect to any group health plan maintained by CHS which provides coverage to eligible Employees, CHS assumes responsibility for proper COBRA administration, subject to timely notification by YesCare of the occurrence of any "qualifying event". For these purposes any group health plan shall be maintained by CHS only if the contract is between CHS and the insurer.

## VIII. INDEMNIFICATIONS.

A. YesCare shall release, defend, indemnify and hold harmless CHS and its officers, directors, shareholders, affiliates, subsidiaries, employees and agents (collectively, the "CHS Indemnified Parties") from and against any losses, liabilities, claims, obligations and/or expenses including, without limitation, court costs and reasonable attorneys' fees (collectively "Damages") that may be incurred by or asserted against any of the CHS Indemnified Parties, arising from or related to, in whole or in part, (i) the acts, errors or omissions of YesCare (or its agents) or the Employees; (ii) any breach of this Agreement by YesCare; and (iii) except as otherwise provided in this Agreement, any claims asserted by or liability to third parties arising from or related to, in whole or in part, YesCare's business.

B. CHS shall release, defend, indemnify and hold harmless YesCare and its officers, directors, shareholders, affiliates, subsidiaries, employees and agents (collectively, the "YesCare Indemnified Parties") from and against any Damages that may be incurred by or asserted against any of the YesCare Indemnified Parties, to the extent such Damages arise from or are related to (i) the acts, errors or omissions of CHS (or its agents); and (ii) any breach of this Agreement by CHS.

C. These indemnifications shall survive the termination of this Agreement.

## IX. OBLIGATIONS UPON TERMINATION.

Upon termination of this Agreement, YesCare agrees to:

1. Pay all outstanding invoices or Fees due CHS;

2. Pay CHS for any payments required for unused vacation leave, severance pay, or other compensation due to employees after termination of this Agreement;

3. Continue to cooperate with CHS in the investigation or litigation of any claim or complaint.

4. Obtain replacement health insurance coverage for Employees, if those Employees are covered by CHS's health benefit plans.

5. Assume sole and exclusive responsibility and liability for all legal obligations as an employer to Employees including, but not limited to, obtaining workers compensation coverage for Employees.

6. Assist CHS in informing Employees that the Agreement has been terminated.

## X. GENERAL PROVISIONS.

**A.  APPLICABLE LAW**. This Agreement shall be governed by the laws of the State of Tennessee and both Parties consent to venue and personal jurisdiction over them in the courts of that state, including the federal courts, for purposes of construction and enforcement of this Agreement.

**B.  ENTIRE AGREEMENT**. This Agreement constitutes the entire understanding between the Parties with respect to its subject matter and supersedes all prior agreements and understandings, written or oral, with respect to its subject matter.

**C.  MODIFICATION**. This Agreement may not be altered or amended except by written agreement duly executed by the Parties.

**D.  ASSIGNMENTS**. Neither Party may  assign this Agreement without the prior written consent of the other Party.

**E.  SEVERABILITY**. Should any term, condition or provision of this Agreement be held to be invalid or unenforceable, the balance of this Agreement shall remain in force and shall stand as if the unenforceable part did not exist.

**F.  NOTICES**. Whenever notices are required to be sent to either party, the notices shall be sent to the following addresses:

CHS
205 Powell Place
Brentwood, TN 37027
Attn: POALIM GROUP LLC

YesCare:
YesCare Corp.
205 Powell Place
Suite 104
Brentwood, TN 37027
Attn:  Chief Legal Officer

**G.  WAIVER**. The failure of any Party to enforce at any time the provisions of this Agreement shall not be construed as a waiver of any provision or of the right of such party thereafter to enforce each and every provision of this Agreement.

**H.  HEADINGS**. The headings of this Agreement are inserted solely for the convenience of reference. They shall in no way define, limit, extend or aid in the construction, extent or intent of this Agreement.

**I.  NO THIRD PARTY BENEFICIARY**. The Parties acknowledge and agree that this Agreement creates no rights for or in favor of any person or third party not a party to this Agreement, and that no such person may place any reliance hereon.

**J. COOPERATION**. If an Employee or a government agency or entity files any type of claim, lawsuit or charge against CHS, YesCare or both, alleging a violation(s) of any law or failure to do something which was otherwise required by law, YesCare and CHS shall each cooperate with the

other's defense of such claim, lawsuit or charge. CHS and YesCare will make available to each other upon request any and all documents that either Party has in its possession which relate to any such claim, lawsuit or charge. However, neither Party shall have the duty to cooperate with the other if the dispute is between the Parties themselves, nor shall this provision preclude the raising of cross claims or third party claims between YesCare and CHS, if the circumstances justify such proceedings. The Parties agree that this provision shall survive the termination of this Agreement.

**IN WITNESS WHEREOF, the Parties enter into this Agreement as of the date first written above.**

**CHS EMPLOYEE GROUP, LLC**  **YESCARE CORP.**

**Signature** _____  **Signature** _____

**Print Name** Isaac Lefkowitz  **Print Name** Scott King

**Title** Director  **Title** GC

# **EXHIBIT F**


COLE SCHOTZ P.C.

2121 SW 3rd Avenue, Suite 200
Miami, FL 33129
305.374.4848    305.503.6976 fax
—
New Jersey
—
New York
—
Delaware
—
Maryland
—
Texas
—
Washington, DC

Luis Salazar
Member
Admitted in FL, NJ, and NY

Reply to Florida Office
Writer's Direct Line: 305.374.4802
Writer's E-Mail: LSalazar@coleschotz.com

July 1, 2026

**VIA EMAIL**
Isaac Lefkowitz
CHS Employee Group LLC
il@correct.health

> Re:    **In re: CHS FL, LLC,** *et al.***, Case No. 2:26-bk-01087-FMR (Bankr. M.D. Fla.) Meet and Confer Regarding CHS Employee Group LLC's Deficient Subpoena Response**

Dear Mr. Lefkowitz:

As you know, this firm represents the Statutory Unsecured Claimholders' Committee.

On June 8, 2026, the Committee issued its *Subpoena to Testify at a Deposition in a Bankruptcy Case* (the "**Subpoena**"), and thereafter properly served it upon CHS Employee Group, LLC. The Committee was then forced to move to compel CHS Group's compliance with that Subpoena because of your failure to comply. The Court granted that motion and entered the *Order Granting the Statutory Unsecured Claimholders' Committee's Amended Emergency Motion to Compel Discovery from CHS Employee Group LLC* [Docket No. 288] (the "**Order Compelling Discovery**").

On June 24, 2026, we at last received CHS Group's response to the Subpoena. As you know, your response to the Subpoena is woefully inadequate and an intentional violation of the Order Compelling Discovery for the following reasons.

*First*, CHS Group's response to each document request improperly provides "N/A," "MSA," or "Debtor has it." These responses are deficient because they fail to state whether CHS Group (a) possesses responsive documents, (b) objects to any request, (c) is withholding documents on any basis, or (d) will produce documents. At best, these responses are incomplete; at worst, they are evasive and obstructive. Under the Federal Rules of Civil Procedure, such responses are treated as no response at all. CHS Group has therefore failed to comply with the Subpoena and the Order Compelling Discovery—conduct warranting a finding of contempt and sanctions.

*Second*, CHS Group is willfully withholding documents in its possession or control. For example, CHS Group responded "N/A" or "Debtor has it" and produced no documents for the following requests:

 COLE SCHOTZ P.C.

Isaac Lefkowitz
July 1, 2026
Page 2

4. Documents sufficient to identify all direct and indirect equity holders of CHS Group.

10. Documents sufficient to identify all bank accounts owned or controlled by CHS Group.

11. Documents sufficient to identify all transfers made by CHS Group to, or on behalf of, any Non-Debtors, CFG Health, or other entity, related to the Leased Employees.

23. All federal and state tax returns of CHS Group.

The responsive documents required by those and other requests are plainly within CHS Group's possession or control. CHS Group is therefore intentionally withholding documents in violation of the Federal Rules and the Order Compelling Discovery.

*Third*, because CHS Group's response does not constitute a legally sufficient response under the Federal Rules, CHS Group has waived any objections to the Subpoena and must fully comply with all requests.

In light of CHS Group's continued noncompliance, the Committee demands the following:

1. A meet-and-confer call with CHS Group **today, July 1, 2026**, at 5:00 p.m. Eastern time;

2. Production of all documents responsive to the Subpoena **no later than July 2, 2026 at 9:00 a.m. (ET)**; and

3. Appearance of a designated representative of CHS Group for deposition **at a time to be determined once responsive documents have been produced**.

Failing your full cooperation with the foregoing, we will immediately move to hold you in civil contempt and seek continuing monetary sanctions until CHS Group complies with the Order Compelling Discovery.

Please be guided accordingly.

Very truly yours,

*/s/ Luis Salazar*

Luis Salazar

MAS:amls